Argued and submitted September 26, 1990, affirmed October 30, 1991,
reconsideration denied January 8, petition for review allowed February 25, 1992
(312 Or 676)

STATE OF OREGON,
*Respondent,*

*v.*

DONALD EDWARD CORNELL,
*Appellant.*

(85-1107; CA A49478)

820 P2d 11

Laura Graser, Portland, argued the cause and filed the brief for appellant.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, Ann Kelley, Assistant Attorney General, and Timothy A. Sylwester, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

RICHARDSON, P. J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

## RICHARDSON, P. J.

Defendant appeals his convictions on two counts of felony murder for the death of John Ruffner, ORS 163.115. One count was for homicide during the course of the robbery of the victim and one for homicide in the course of burglarizing the victim's residence.[1] He was jointly indicted with Pinnell but there were separate trials. *See State v. Cornell/ Pinnell,* 304 Or 27, 741 P2d 501 (1987). Pinnell was convicted of aggravated murder and sentenced to death. His convictions were affirmed, but the death sentence was vacated. *State v. Pinnell,* 311 Or 98, 806 P2d 110 (1991). Defendant seeks reversal of his convictions on several grounds or modification of the minimum sentence. We affirm.

The facts of the homicide are set out in some detail in *State v. Pinnell, supra,* and we refer the reader to that case for a more complete fact statement. Defendant and Pinnell got the victim's name and phone number from the Swing N Sway magazine, where people advertise for sexual contacts. They drove to the victim's residence in a car borrowed from Dixie Timmons, Pinnell's ex-wife. They were accompanied by a woman named Velma Varzali. She stayed in the car when defendant and Pinnell went into the victim's residence. Several hours later the two men returned to the car and loaded it with personal property taken from the residence. Later that same day, defendant wrote checks on the victim's account and used his credit cards.

The next day, the victim's body was discovered on the bathroom floor of his apartment. His feet and hands were tied behind his back with an electric appliance cord and there was a cord around his neck. Evidence at trial described this type of restraint as "hog-tying." The victim died of asphyxiation, because of the cord around his neck and the wad of toilet paper stuffed in his mouth. The apartment had been ransacked and several items of property taken, including the victim's wallet and checkbook.

When defendant and Pinnell were arrested a few days later at Timmons' house, defendant had the victim's

---

[1] Defendant was charged in two indictments with six counts of aggravated murder in addition to the two counts of felony murder. He was acquitted on the aggravated murder counts.

checkbook and credit cards and was wearing two rings taken from the victim. The police also seized several items of the victim's property that were at Timmons' house.

During trial, the state introduced evidence that defendant and Pinnell had assaulted and robbed Randy Brown about 10 days before they killed Ruffner. The state's theory for admission of the evidence was that the facts of the Brown assault were so similar to the Ruffner homicide that it was relevant to identify the two men as the perpetrators of that killing. The state also offered evidence of a robbery of Anthony Johnson as relevant to identify defendant as the murderer of Ruffner.

■■ Defendant makes 13 assignments of error. The first four challenge the admission of 11 separate statements made by Pinnell and related at trial by various witnesses. The statements related either to the Ruffner murder or the Brown robbery. Pinnell declined to testify on constitutional grounds and was unavailable as a witness. OEC 804(1).

The state contended that the statements were admissible under OEC 801(4)(b)(E) as statements of a co-conspirator or as statements against Pinnell's penal interest. OEC 804(3)(c). Defendant's argument is in three parts. He argues that the statements were not admissible under the co-conspirator exception, because (1) the state did not establish that there were conspiracies involving him to kill Ruffner or to rob Brown; (2) if there were conspiracies, the statements were not made in furtherance of either one of them; and (3) if properly admitted under OEC 801(4)(b)(E), their admission violated defendant's confrontation rights under the state and federal constitutions.

OEC 801(4)(b)(E) provides:

"A statement is not hearsay if:

"* * * * *

"(b) The statement is offered against a party and is:

"* * * * *

"(E) A statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

In order for the statements attributed to a co-conspirator to be admitted under OEC 801(4)(b)(E), the state must show a

conspiracy involving the defendant by a preponderance of the evidence. *State v. O'Brien,* 96 Or App 498, 774 P2d 1109, *rev den* 308 Or 466 (1989). Whether that showing has been made is a preliminary question for the court under OEC 104. In making that determination, the court may consider statements of the co-conspirator together with other evidence. *State v. O'Brien, supra.* Without further detailing it, we conclude that there was evidence to support the trial court's ruling that defendant conspired with Pinnell to rob Brown and, later, to rob Ruffner.

■■ Once the state has established a prima facie case that the conspiracy exists, statements of a co-conspirator made "during the course and in furtherance of" the conspiracy are admissible under OEC 801(4)(b)(E). A conspiracy continues until its objective has been achieved or abandoned, *State v. Davis,* 19 Or App 446, 528 P2d 117 (1974), and, in case of a conspiracy to rob, until the stolen property has been disposed of. *State v. Gardner,* 225 Or 376, 358 P2d 557 (1961). Because defendant and Pinnell were arrested before they had disposed of all the property taken from Brown and Ruffner, the conspiracies continued, at least up to the time of their arrests. Consequently, all the statements of Pinnell offered by the state were made during the course of the conspiracies.

Defendant challenges 11 separate statements of Pinnell that were admitted under the co-conspirator rule. He contends, *inter alia,* that none of the statements was made in furtherance of the conspiracy to which they allegedly related.

There are no Oregon cases explaining the phrase "in furtherance of" in OEC 801(4)(b)(E).[2] The rule is derived from Federal Rules of Evidence 801(d)(2)(E), *State v. O'Brien supra,* and we may look to federal cases applying the federal rule as interpretive guides.

■■ Out-of-court statements attributed to a co-conspirator, including those about past events, are in furtherance of the conspiracy if they are intended to promote the conspiratorial objective. *U.S. v. Munson,* 819 F2d 337 (1st Cir 1987); *U.S. v. Reyes,* 798 F2d 380 (10th Cir 1986). A statement need not have

---

[2] OEC 804(4)(b)(E) was adopted in 1981; it replaced *former* ORS 41.900, which required that the co-conspirator's statement "relate to" the conspiracy. *See State v. Pottle,* 62 Or App 545, 662 P2d 351, *aff'd* 296 Or 274, 677 P2d 1 (1984).

furthered the conspiracy in fact if it could reasonably be interpreted as made for that purpose. *U.S. v. Schmit,* 881 F2d 608 (9th Cir 1989); *U.S. v. Wolf,* 839 F2d 1387 (10th Cir), *cert den* 488 US 923 (1988). Statements between conspirators that bolster confidence and maintain mutual trust are in furtherance of the conspiracy, as are statements that inform co-conspirators of the status of the planned activity and disposition of the proceeds of the crime. *U.S. v. Traitz,* 871 F2d 368 (3rd Cir), *cert den* 493 US 821 (1989); *United States v. Ammar,* 714 F2d 238 (3rd Cir), *cert den* 464 US 936 (1983); *see also U.S. v. Yarbrough,* 852 F2d 1522 (9th Cir), *cert den* 488 US 866 (1988); *U.S. v. Tarantino,* 846 F2d 1384, 269 ADC 398 (DC Cir), *cert den* 488 US 840 (1988). We have examined each of the statements that defendant challenges and conclude that each was made in furtherance of either the conspiracy to rob Brown or to rob and kill Ruffner.

Defendant's final challenge to the statements of Pinnell is that their admission violates his confrontation rights under the Sixth Amendment to the United States Constitution or Article I, section 11, of the Oregon Constitution.

In *State v. Campbell,* 299 Or 633, 705 P2d 694 (1985), the court used a two-part test, adopted from *Ohio v. Roberts,* 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), to determine if admission of hearsay satisfied the federal Confrontation Clause. First, the declarant must be unavailable to testify and, second, the out-of-court statement must have "adequate indicia of reliability." The reliability of the statement can be inferred, without more, in a case where the evidence falls within a firmly rooted hearsay exception. The same test is applicable under the state Confrontation Clause. *State v. Moen,* 309 Or 45, 786 P2d 111 (1990).

The trial court found that Pinnell was unavailable because he asserted his constitutional right not to testify. Defendant does not challenge that finding. *See* OEC 804.

In *State v. Moen, supra,* the court noted that whether a hearsay exception is "firmly rooted" does not turn on how long the rule has been accepted but rather how solidly it is grounded on considerations of reliability. Long use and acceptance of the exception weigh in favor of finding that it is firmly rooted. The exception, codified in OEC 801(4)(b)(E),

appeared in Oregon statutes as early as 1862, Act of October 11, 1862, § 696(6), and has been part of Oregon's jurisprudence since that time. *See State v. Farber,* 295 Or 199, 666 P2d 821 (1983); *State v. Hinkle,* 33 Or 93, 54 P 155 (1898).

■     The primary consideration regarding reliability of the evidence admitted under the rule is the rationale for the exception to the exclusion of hearsay. The co-conspirators' exception has been justified on the basis that the statements were made by the defendant's agent and should therefore be considered statements made by the defendant. This rationale has been extensively criticized as a legal fiction that has little relationship to reliability. *See State v. Farber, supra,* 295 Or at 205.

■     Another rationale for the exception is discussed in Saltzburg and Redden, *Federal Rules of Evidence Manual* 462 (2d ed 1977). The authors explain that evidence admitted under this exception is reliable, because

" '[a]ctive conspirators are likely to know who the members of a conspiracy are and what they have done. They are unlikely to describe non-members as conspirators or to mistakenly describe the actions of their fellow members on behalf of the conspiracy.* * *

"* * * If the 'in furtherance of' language, the 'during the course' language and the independent evidence requirement [for proof of a conspiracy] are taken seriously, there is every reason to believe that conspirators' statements can be of assistance in the search for truth."

We concur in and adopt that analysis. The requirement of the rule that the statement be made "during the course" of the conspiracy provides a time frame for reliability. When the conspiracy is ongoing, the events are likely to be fresh in the minds of the conspirators, and there is little chance that the statements will be unreliable because of faulty memories. The "in furtherance of" requirement focuses on the motive and interest of the speaker. We conclude that OEC 801(4)(b)(E) codifies a firmly rooted exception to the rule against admission of hearsay and that defendant's confrontation rights under the state and federal constitutions were not violated by admission of the statements.

In the fifth and sixth assignments, defendant contends that the court erred by admitting transcripts of the testimony of Lee Edger and Anthony Stinsman given at a security release hearing for defendant and Pinnell. Both defendant and Pinnell had challenged admission of the transcripts, and the court denied their joint motion. Defendant makes the same claims of error and arguments to support them as did Pinnell in his appeal. For the reasons expressed by the Supreme Court in *State v. Pinnell, supra,* we reject these assignments of error.

Defendant's seventh assignment is that the court erred by admitting testimony of a police detective. He objected that there was "no foundation" for the testimony. The objection was overruled, and the detective testified:

"Q [Prosecutor:] Detective Schultze, in your experience is it usual or unusual for victims of robbery-type offenses to be left hogtied?

"* * * * *

"A [Schultze:] It is unusual."

The state had offered the evidence to support its theory that defendant committed the murder in this case, because he had committed two other robberies in which the victims were hogtied.

Defendant does not challenge the detective's qualifications to testify about hog-tying victims. He appears to argue that the evidence is not relevant, because it would not be helpful to the jury and because it was based only on the detective's recollection and not on a comprehensive review of the police records. Defendant confuses relevance and weight. The testimony is helpful to the jury in that the relative frequency of hog-tying victims is an issue of fact in the case and outside the experience of the ordinary citizen juror. The evidence was relevant. The weight of the testimony was for the jury.

Defendant also argues that the testimony was an improper opinion on the ultimate issue. He is wrong. The ultimate issue was whether defendant committed the murder. The challenged testimony related to an intermediate issue: Was hog-tying robbery victims sufficiently unique that

it served to identify defendant as the murderer of Ruffner? The testimony was properly admitted.

■    Defendant next contends, in the eighth assignment, that the court erred by admitting evidence about the robbery of Brown. Defendant and Pinnell moved, before trial, to exclude the evidence. The motion was denied. Pinnell assigned that ruling as error in his appeal, and the court held that the evidence was properly admitted. Defendant makes essentially the same arguments as did Pinnell, except that he contends that there was not sufficient evidence that he participated in the Brown robbery. The evidence was that two men robbed and hog-tied Brown. Pinnell was identified as one of the robbers, but defendant was not. However, there was considerable circumstantial evidence that defendant was involved with Pinnell in the robbery. For that reason, and the reasons set out in the Supreme Court's opinion in *State v. Pinnell, supra,* we conclude that the court did not err in denying defendant's motion to exclude the evidence.

The ninth assignment involves the same type of evidence. The court admitted, over defendant's objection, evidence that he had robbed Johnson in 1976. Johnson had been hog-tied. Defendant argues that there are not sufficient similarities between the Johnson robbery and the Ruffner homicide to allow admission of the robbery in the light of OEC 404(3), relating to evidence of prior crimes. The criteria for determining admission of evidence of other crimes to prove identity was discussed by the Supreme Court regarding the Brown robbery in *State v. Pinnell, supra.* Although the facts of the Brown and Johnson robberies are different, the analysis is the same. The trial court found that there were sufficient similarities to admit the evidence. Without detailing the evidence of the Johnson robbery, we conclude that the court properly admitted the evidence.

■    Assignment of error 10 also relates to evidence of another robbery that defendant may have committed. The evidence came in during cross-examination of defendant by the prosecutor about the Johnson robbery:

"Q  [Prosecutor:] Mr. Cornell, do you remember three days [after the Johnson robbery], * * * a man named Linkous; you robbed him, too, didn't you?

"A  [Defendant:] I recall robbing a Linkous in 1976."

Defendant objected and later moved for a mistrial. However, the objection and the grounds for the mistrial did not relate to the Linkous robbery. The arguments defendant now makes were not made below. In any event, defendant had testified on direct examination that he was involved in three or four robberies in 1976; consequently, if admission of the evidence was error, it was clearly harmless and does not warrant reversal.

■  Defendant next contends that exclusion of evidence that he offered that he had not been charged with the Brown robbery was error. He argues that, because evidence that a defendant has been acquitted of a crime is relevant and admissible, *State v. Smith*, 271 Or 294, 532 P2d 9 (1975), evidence that he was not charged is also admissible. The analogy that the defendant constructs is far from pure. As the state points out:

> "An acquittal is admissible because the jury weighing the probative value of the prior-crime evidence properly may consider 'that at another time and place a duly constituted tribunal charged with the very issue of determining defendant's guilt or innocence of the other crime concluded that he was not guilty,' *i.e.*, that the state had its chance and failed to prove beyond a reasonable doubt that the defendant committed the crime. *State v. Smith, supra*, 271 Or at 299 (quotation marks omitted). A decision by the district attorney not to seek charges yet for a prior crime, on the other hand, is neither an assessment of the facts by a neutral tribunal nor any sort of decision on the merits of defendant's guilt."

The trial court noted that "there could be many reasons why someone was not prosecuted other than the fact that they [sic] did or did not commit the crime." Evidence that defendant had not been charged with the crime does not tend to prove an issue at trial; it does not prove whether defendant was involved in the Brown robbery. The court properly excluded the evidence.

■  In assignment 12, defendant assigns error to the denial of his two motions for judgment of acquittal. The essence of his motions was that there was insufficient evidence to show that he was present during the homicide and that the evidence only shows that he was in possession of

stolen property. There was sufficient evidence of defendant's involvement in the homicide from which a jury could find him guilty beyond a reasonable doubt. The motions for acquittal were properly denied.

In the final assignment, defendant contends that the court erred by imposing a minimum term of 25 years. He argues that, because the jury found him not guilty of the aggravated murder counts, it necessarily found that his participation was not aggravated and the court abused its discretion in imposing the minimum term. The term was imposed pursuant to ORS 163.115(3)(c), and defendant concedes that it was authorized. The trial court explained that it imposed the minimum term because of defendant's extensive criminal record and the court's assessment that defendant is a dangerous individual. There was no abuse of discretion.

Affirmed.