Argued and submitted May 8, decision of Court of Appeals and judgment of circuit court affirmed November 25, 1992

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## DONALD EDWARD CORNELL,
*Petitioner on Review.*

(CC 85-1107; CA A49478; SC S38725)

842 P2d 394

Laura Graser, Portland, argued the cause and filed the petition for petitioner on review.

Michael Livingston, Assistant Attorney General, Salem, argued the cause for respondent on review.

UNIS, J.

**UNIS, J.**

Defendant appeals from convictions on two counts of felony murder for the homicide of John Ruffner, allegedly committed during the course of robbing him and burglarizing his residence. ORS 163.115. Defendant was originally indicted with Mark Allen Pinnell in October 1985 for one count of aggravated murder and two counts of felony murder. In January 1988, defendant and Pinnell were indicted on five counts of aggravated murder.[1] Defendant's motion for a separate trial was allowed in March 1988.[2] In that trial, defendant was acquitted of aggravated murder and convicted on both counts of felony murder, which were merged for purposes of sentencing. The Court of Appeals affirmed the judgment of the trial court. *State v. Cornell*, 109 Or App 396, 820 P2d 11 (1991). We allowed review to consider defendant's challenge of the introduction of evidence of statements of a coconspirator under OEC 801(4)(b)(E).

We take the following statement of facts from the Court of Appeals' opinion:

"Defendant and Pinnell got the victim's name and phone number from the Swing N Sway magazine, where people advertise for sexual contacts. They drove to the victim's residence in a car borrowed from Dixie Timmons, Pinnell's ex-wife. They were accompanied by a woman named Velma Varzali. She stayed in the car when defendant and Pinnell went into the victim's residence. Several hours later the two men returned to the car and loaded it with personal property taken from the residence. Later that same day, defendant wrote checks on the victim's account and used his credit cards.

"The next day, the victim's body was discovered on the bathroom floor of his apartment. His feet and hands were tied behind his back with an electric appliance cord and there was a cord around his neck. Evidence at trial described this

---

[1] In the interim, defendant and Pinnell challenged the constitutionality of the charging instrument, which resulted in an appeal that reached this court. The indictments, which had been dismissed by the trial court, were reinstated. *State v. Cornell/Pinnell*, 304 Or 27, 741 P2d 501 (1987).

[2] Pinnell was convicted of aggravated murder and sentenced to death. This court affirmed his convictions, but vacated his sentence of death and remanded for a new penalty phase proceeding. *State v. Pinnell*, 311 Or 98, 806 P2d 110 (1991).

type of restraint as 'hog-tying.' The victim died of asphyxiation, because of the cord around his neck and the wad of toilet paper stuffed in his mouth. [The victim had been struck on the right side of his head, which caused a tear of his ear.] The apartment had been ransacked and several items of property taken, including the victim's wallet and checkbook.

"When defendant and Pinnell were arrested a few days later at Timmons' house, defendant had the victim's checkbook and credit cards and was wearing two rings taken from the victim. The police also seized several items of the victim's property that were at Timmons' house.

"During trial, the state introduced evidence that defendant and Pinnell had assaulted and robbed Randy Brown about 10 days before they killed Ruffner. The state's theory for admission of the evidence was that the facts of the Brown assault were so similar to the Ruffner homicide that it was relevant to identify the two men as the perpetrators of that killing." *Id.* at 398-99.

The trial court, over defendant's objection, allowed the state to introduce, through the testimony of other witnesses, eleven statements made by Pinnell.[3] The Court of Appeals held that the trial court did not err in admitting the statements as statements of a coconspirator under OEC 801(4)(b)(E). *State v. Cornell, supra,* 109 Or App at 401. The Court of Appeals also held that the admission of the coconspirator statements did not violate defendant's confrontation rights under either Article I, section 11, of the Oregon Constitution or the Sixth Amendment to the United States Constitution. *Id.* at 402. We affirm.

When "offered against a party," OEC 801(4)(b)(E) treats as "not hearsay"[4] "[a] statement by a coconspirator of

---

[3] Setting out the full text of Pinnell's statements would serve no useful purpose. The one statement that raises the closest question as to its admissibility is discussed *infra,* 314 Or at 680.

[4]

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 801(3).

OEC 801(4) provides:

"A statement is not hearsay if:

"* * * * *

"(b) * * * The statement is offered against a party and is:

a party during and in furtherance of the conspiracy."[5] OEC 801(4)(b)(E) requires that the party seeking to introduce a statement by a coconspirator must establish, as foundational requirements: (1) that there was a conspiracy in which both the accused and the declarant[6] were members; (2) that the declarant made his or her statement "during the course" of the conspiracy; and (3) that the statement was made "in furtherance of the conspiracy." Whether the foundational requirements are met is a preliminary question of fact to be determined by the trial court under OEC 104(1),[7] and each requirement is to be established by a preponderance of the evidence. *See State v. Carlson*, 311 Or 201, 209, 808 P2d 1002 (1991) (admissibility of statements of a party-opponent is to be resolved by trial court under OEC 104(1)).[8]

In the present case, the statements at issue — Pinnell's statements — were offered by the state against a party (defendant). Thus, in order to admit Pinnell's statements under OEC 801(4)(b)(E), the trial court was required to find by a preponderance of the evidence (1) that there was a conspiracy with respect to the Ruffner and Brown crimes and that both defendant and the declarant (Pinnell) were members of that conspiracy, (2) that Pinnell's statements were

---

"* * * * *

"(E) A statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

[5] Before the adoption of the Oregon Evidence Code, coconspirator statements were admissible as an *exception* to the hearsay rule. *See State v. Farber*, 295 Or 199, 666 P2d 821 (1983). The Oregon Evidence Code defines coconspirator statements as "not hearsay." *See supra*, note 4. By being defined as "not hearsay," coconspirator statements are *exempt* from the ban of the hearsay rule. Whether such statements are treated as an "exemption" or as an "exception" to the hearsay rule, the result is the same, *i.e.*, they are admissible over a hearsay objection.

[6] For the purposes of the hearsay rule, OEC 801(2) provides:

"A 'declarant' is a person who makes a statement."

[7] The Supreme Court of the United States stated the same proposition with respect to FRE 801(d)(2)(E), the federal counterpart to OEC 801(4)(b)(E), in *Bourjaily v. United States*, 483 US 171, 175-76, 107 S Ct 2775, 97 L Ed 2d 144 (1987). The Court applied FRE 104(a), the federal counterpart to OEC 104(1), to FRE 801(d)(2)(E) to govern the inquiry into the preliminary questions concerning the admissibility of statements of coconspirators.

[8] OEC 801(4)(b) includes in its definition of statements of a party-opponent, "[a] statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

made "during the course" of the conspiracy, and (3) that Pinnell's statements were made "in furtherance of the conspiracy." The trial court found that the foundational requirements were met and admitted Pinnell's statements under OEC 801(4)(b)(E).

On review, we determine whether there was sufficient evidence to support the trial court's finding, by a preponderance of the evidence, that the preliminary foundational requirements were met. *State v. Carlson, supra*, 311 Or at 214. In making this determination, "[w]e view the record consistent with the trial court's ruling * * *, accepting reasonable inferences and reasonable credibility choices that the trial judge could have made." *Id.*

## EXISTENCE OF CONSPIRACY AND MEMBERSHIP REQUIREMENT

■ The substantive law defines a conspiracy. ORS 161.450(1) states that a criminal conspiracy exists if, "with the intent that conduct constituting a crime punishable as a felony or a Class A misdemeanor be performed, [a] person agrees with one or more [other] persons to engage in or cause the performance of such conduct." Although the substantive law defines a criminal conspiracy, the Oregon Evidence Code states the evidentiary principles concerning the admissibility of coconspirator statements. A person need not be charged with or found guilty of criminal conspiracy or of the underlying crime in order to be a coconspirator under OEC 801(4)(b)(E).[9] *See State v. Gardner*, 225 Or 376, 384, 358 P2d 557 (1961) (prior to adoption of evidence code, admissibility of statements of coconspirators did not depend on including conspiracy in indictment); 2 McCormick on Evidence 168, § 259 (4th ed 1992) (citing federal cases) ("[t]he existence of a conspiracy in fact is sufficient to support admissibility, and a conspiracy count in the indictment is not required and the declarant need not be charged"). Because there usually is no formal agreement to begin a conspiracy, the very existence of

---

[9] OEC 801(4)(b)(E) is not limited by its terms to criminal prosecutions or criminal conspiracies. "The evidence is similarly admissible in civil cases, where the conspiracy rule applies to tortfeasors acting in concert." 2 McCormick on Evidence 168, § 259 (4th ed 1992). *See Bonds v. Landers*, 279 Or 169, 566 P2d 513 (1977) (discussion of civil conspiracy).

a conspiracy usually must be inferred from the facts surrounding the statements. 4 Weinstein & Berger, Weinstein's Evidence 801-335, ¶ 801(d)(2)(E)[01] (1992). *See State v. Farber*, 295 Or 199, 206 n 9, 666 P2d 821 (1983) ("the evidence to establish a conspiracy is generally circumstantial"); *Glasser v. United States*, 315 US 60, 80, 62 S Ct 457, 86 L Ed 680 (1942) (quoting *United States v. Manton*, 107 F2d 834, 839 (2d Cir 1938)) (under federal rules, "[p]articipation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances' ").

■ Based on the facts in the record, summarized above, and accepting reasonable inferences and reasonable credibility choices that the trial judge could have made, we conclude that there was sufficient evidence to support the trial judge's finding, by a preponderance of the evidence, that a conspiracy existed with respect to the Ruffner and Brown crimes and that defendant and Pinnell were members of that conspiracy.

## "DURING THE COURSE" OF THE CONSPIRACY REQUIREMENT

■ For the purpose of applying the coconspirator exemption in OEC 801(4)(b)(E), the duration of a conspiracy is not limited by the commission of the elements of the underlying crime. Conduct before or after the commission of the elements of the underlying crime are part of a conspiracy, if the conduct is either in planning, preparing for, or committing the crime, or in eluding detection for, disposing of, or protecting the fruits of the crime.[10] Here, the alleged conspiracy included robbing the victims. At a minimum, a conspiracy to rob continues until the articles stolen are removed from the scene of the crime and are disposed of in some manner. *See State v. Gardner, supra*, 225 Or at 384 (so stating under former conspiracy statute).

---

[10] *See State v. Davis*, 19 Or App 446, 450-51, 528 P2d 117 (1974) (suggesting that conspiracy is not perpetual despite continuous attempts to avoid detection for crime; discussing possibility of distinction between affirmative acts of concealment and general acts of concealment). *See also* 2 McCormick on Evidence, *supra*, at 165-68, § 259 (discussing this topic under FRE 801(d)(2)(E), the federal counterpart to OEC 801(4)(b)(E)).

■     In this case, the challenged statements by Pinnell were made before or shortly after one of the robberies and before the stolen articles had been disposed of. There was sufficient evidence to support the trial judge's finding, by a preponderance of the evidence, that Pinnell's statements were made "during the course" of the conspiracy.

## "IN FURTHERANCE OF THE CONSPIRACY" REQUIREMENT

■■     Pinnell's statements must also have been made "in furtherance of the conspiracy." This requirement goes beyond the temporal requirement that the statement be made "during the course" of the conspiracy and focuses on whether the statement was intended in some way to advance the objectives of the conspiracy. A statement in furtherance of a conspiracy must have been meant to advance the objectives of the conspiracy in some way, *i.e.*, it must be made in furtherance of planning, preparing, or committing the crime, or in furtherance of eluding detection for, disposing of, or protecting the fruits of the crime. Whether this prerequisite is met is determined in the context in which the particular statement is made. Weinstein & Berger, *supra*, at 801-318 to -323, ¶ 801(d)(2)(E)[01]. When a statement is made in the presence of a coconspirator, a statement that would not otherwise be in furtherance of the conspiracy may be in furtherance of the conspiracy if the statement demonstrates a desire to encourage a coconspirator to carry out the conspiracy or to develop camaraderie in order to ensure the success of the continuing conspiracy.[11]

■     In this case, defendant challenges the introduction of a coconspirator's statement, related by Varzali, that "I went for the ear, but ol' [defendant] had got there first." If this statement had been made to the police or out of the presence of defendant, it might be difficult to see how it could be in furtherance of the conspiracy. Here, however, the statement was made in defendant's presence, and the record reflects that defendant was "really quiet" and "very upset."

---

[11] For descriptions of federal cases analyzing whether statements were made in furtherance of a conspiracy under FRE 801(b)(2)(E), the counterpart to OEC 801(4)(b)(E), see Kirkpatrick, Oregon Evidence 516 (2d ed 1989). *See also* 2 McCormick on Evidence, *supra*, at 165-68 (discussing "in furtherance of the conspiracy" requirement).

Although the alleged crime had been completed just prior to the statement, defendant and the coconspirator were fleeing from the scene with the stolen articles; the conspiracy was continuing. In these circumstances, a trier of fact would be entitled to infer that the coconspirator's statements were made to encourage defendant, a coconspirator, to carry out the conspiracy or to develop camaraderie with defendant in order to ensure the success of the continuing conspiracy. There was, therefore, sufficient evidence to support the trial judge's finding, by a preponderance of the evidence, that the statement was made in furtherance of the conspiracy.

We have examined the other statements made by Pinnell and, accepting reasonable inferences and reasonable credibility choices that the trial judge could have made, we find that there was sufficient evidence to support the trial judge's finding, by a preponderance of the evidence, that each statement was made during the course of and in furtherance of the conspiracy.

We conclude that the eleven statements made by Pinnell were admissible as statements of a coconspirator under OEC 801(4)(b)(E).

## CONFRONTATION CLAIMS

Defendant also challenges the admission of the coconspirator statements as violations of his confrontation rights under Article I, section 11, of the Oregon Constitution[12] and the Sixth Amendment to the United States Constitution.[13] The Court of Appeals held that defendant's confrontation rights were not violated. *State v. Cornell,* *supra,* 109 Or App at 402. We agree.

We shall first consider defendant's argument based on Article I, section 11, of the Oregon Constitution. *See* *Sterling v. Cupp,* 290 Or 611, 614, 625 P2d 123 (1981) (proper

---

[12] Article I, section 11, of the Oregon Constitution provides:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face * * *."

[13] The Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

sequence is to analyze a state constitutional claim before reaching a federal constitutional claim).

In *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985), this court applied the reasoning of *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), to determine "what constitutes unavailability of a hearsay declarant and what constitutes adequate indicia of reliability of hearsay declarations to satisfy our state constitutional confrontation clause."[14] This court explained that test in *State v. Moen*, 309 Or 45, 62, 786 P2d 111 (1990):

"The United States Supreme Court in *Ohio v. Roberts* established a two-part test to determine whether the admission of the out-of-court statements of a person who does not testify at trial satisfies a criminal defendant's right to confrontation under the Sixth Amendment. First, '[i]n the usual case,' the declarant must be 'unavailable,' and second, the out-of-court statements must have 'adequate indicia of reliability.' 448 US at 65-66. The Court has concluded 'that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the "substance of the constitutional protection" ' 448 US at 66. Thus, the '[r]eliability' of the out-of-court statement 'can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.' In cases where the evidence does not fall within a 'firmly rooted' hearsay exception, it may be admitted if the proponent can make 'a showing of particularized guarantees of trustworthiness.' *Id.*"

In this case, the trial court found that the coconspirator was unavailable because he had asserted his constitutional right not to testify. Defendant does not challenge that ruling.[15] The inquiry, then, is whether statements of a coconspirator that are admissible under OEC 801(4)(b)(E) have

---

[14] In *White v. Illinois*, 502 US ____, 112 S Ct 736, 116 L Ed 2d 848 (1992), the Court retained the *Roberts* criterion that a statement is admissible only if it bears adequate indicia of reliability, which may be inferred without more when the evidence falls within a firmly rooted hearsay exception. In *White*, the Court held that hearsay statements admitted at trial under "firmly rooted" exceptions to the hearsay rule satisfy the confrontation clause of the Sixth Amendment to the federal constitution. *Id.*, 112 S Ct at 743.

[15] In *United States v. Inadi*, 475 US 387, 400, 106 S Ct 1121, 89 L Ed 2d 390 (1986), the Supreme Court of the United States held that the federal confrontation clause does not require that the coconspirator be unavailable for the statements of the coconspirator to be introduced. *Compare State v. Campbell*, 299 Or 633, 652, 705 P2d 694 (1985) ("before any out-of-court declaration of any available living witness

"adequate indicia of reliability" to satisfy the confrontation clause in Article I, section 11, of the Oregon Constitution.

■■    In *State v. Campbell, supra*, 299 Or at 648, this court adopted the federal analysis that the reliability of an out-of-court statement can be inferred when it falls within a "firmly rooted" hearsay exception. That is, when the evidence falls within a firmly rooted hearsay exception, it is reliable enough as a class to be admissible without violating the state confrontation clause. *See State v. Moen, supra*, 309 Or at 62-63 (no independent inquiry into reliability of hearsay statements is required to satisfy Oregon's constitutional confrontation clause if hearsay statements fall within a "firmly rooted" hearsay exception). If the evidence does not fall within a firmly rooted hearsay exception, a particularized guarantee of trustworthiness is needed in order to introduce the out-of-court statement and satisfy the confrontation clause. *State v. Campbell, supra*, 299 or at 648. Thus, the question we must first decide concerning the reliability of coconspirator statements is whether the coconspirator "exception" (now technically an "exemption")[16] from the hearsay rule is firmly rooted under Oregon law. If it is, no "particularized guarantees of trustworthiness" is needed in order to satisfy the state confrontation clause.

Long before the enactment of the Oregon Evidence Code in 1981, Oregon and federal courts treated a coconspirator declaration as an exception to the hearsay rule. The coconspirator exception was cited as early as 1794. *State v. Farber, supra*, 295 Or at 205 (citing *Trial of Thomas Hardy*,

---

may be offered against a defendant in a criminal trial, the witness must be produced and declared incompetent by the court to satisfy either Article I, section 11, of the Oregon Constitution, or the Sixth Amendment to the United States Constitution") *with State v. Moen*, 309 Or 45, 62, 786 P2d 111 (1990) (citing *State v. Campbell* as adopting the test in *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), that " '[i]n the usual case,' the declarant must be 'unavailable' ").

[16] *See supra*, note 5. While coconspirator statements are now technically admissible under a hearsay exemption, rather than under a hearsay exception, the same confrontation clause analysis applies to both, because the effect is the same, *i.e.*, the hearsay rule is not a barrier to their admissibility. In fact, the hearsay exemption in FRE 801(d)(2)(E), the federal counterpart to OEC 801(4)(b)(E), continues to be referred to more commonly as a hearsay exception. *See, e.g., Bourjaily v. United States, supra*, 483 US at 179 (using term "hearsay exception" to describe coconspirator exemption in FRE 801(d)(2)(E)).

24 How St Tr 200, 451-53, 473-77 (1794)). The Supreme Court of the United States first mentioned the coconspirator exception, including the "in furtherance of the conspiracy" requirement, in *United States v. Gooding*, 25 US (12 Wheat) 460, 468-69, 6 L Ed 693 (1827). A coconspirator exception appeared in Oregon statutes as early as 1862. Act of October 11, 1862, § 696(6).[17]

■      Under the Oregon Evidence Code, a coconspirator statement that satisfies the requirements of OEC 801 (4)(b)(E) is admissible over a hearsay objection. OEC 801(4) *exempts* a coconspirator's statement from the hearsay rule by defining such a statement as "not hearsay" rather than considering the statements to be admissible hearsay under an exception to the hearsay rule. *See supra*, note 5 (discussing change in nomenclature). Although the hearsay exception for coconspirator statements has existed in different forms, we conclude that the coconspirator exemption in OEC 801(4)(b)(E), with the more restrictive "in furtherance of the conspiracy" requirement,[18] has deep historical roots and is deeply rooted in satisfaction of the state confrontation clause.[19]

---

[17] Act of October 11, 1862, § 696(6), found in Deady, General Laws of Oregon 322, § 696 (1845-1864), provided:

"In conformity with the preceding provisions, evidence may be given on the trial, of the following facts:

"* * * * *

"(6) After proof of a conspiracy, the declaration or act of a conspirator against his co-conspirator, and relating to the conspiracy[.]"

[18] Although the earliest forms of the hearsay exception included the "in furtherance of the conspiracy" requirement, the first statement of the rule in Oregon simply required that the coconspirator statement *relate* to the conspiracy. *See supra* and note 17. At least one early case used the "in furtherance of the conspiracy" language in relation to the coconspirator exception, even when those words did not appear in the text of the rule. *State v. Boloff*, 138 Or 568, 596, 4 P2d 326, 7 P2d 775 (1932). Without explicitly deciding the question, this court proceeded as though the hearsay exception of ORS 41.900(6), which, by its terms, did not require that the statement be made "during the course" or "in furtherance of the conspiracy," was not firmly rooted in *State v. Farber, supra*. Specifically, the court applied a four-part test and considered a fifth part to determine whether the statements·at issue were sufficiently reliable to be admissible. 295 Or at 209-12.

[19] The evidentiary rationale for the admission of statements of coconspirators is unclear. In *State v. Farber, supra*, 295 Or at 205-06, this court observed that the admission of coconspirator statements has

"been justified on three different grounds: 1) these statements were made by the defendant's agent, and thus should be considered statements of the principal;

We hold that coconspirator statements, when made during the course and in furtherance of the conspiracy in which both the accused and the declarant are members, as required by OEC 801(4)(b)(E), have a long tradition of being outside the compass of the general hearsay exclusionary rule. Accordingly, statements admissible under OEC 801(4)(b)(E) fall within a firmly rooted exception to the hearsay rule. Because coconspirator statements fall within a firmly rooted hearsay exception, "the reliability of such statements can be inferred without more" to satisfy the confrontation clause in Article I, section 11, of the Oregon Constitution, as we recognized in *State v. Moen, supra.* We need not, therefore, make any independent inquiry into the reliability of coconspirator statements that satisfy the requirements of OEC 801(4)(b)(E).

Defendant makes the same argument to support his claim under the confrontation clause of the Sixth Amendment to the United States Constitution. In *Bourjaily v. United States, supra,* 483 US at 183-84, the Supreme Court of the United States held that, because the coconspirator exception to the hearsay is firmly enough rooted, "the Confrontation Clause [of the United States Constitution] does not require a court to embark on an independent inquiry into the reliability of statements that satisfy the requirements of Rule 801(d)(2)(E)." Because the statements at issue in this case would be admissible under FRE 801(d)(2)(E),[20] their admissibility does not violate the federal confrontation clause.[21] Accordingly, statements admissible under the state rule are

---

2) these statements tend to be inculpatory, and thus are likely to be trustworthy for the same reasons that statements against interest are; and 3) these declarations must be admitted out of necessity because this is an area of law where proof is difficult." (Footnotes omitted.)

*See also* Allen and Kuhns, An Analytical Approach to Evidence: Text, Problems, and Cases 393-94 (1989) (discussing rationale for coconspirator hearsay exception).

[20] FRE 801(d)(2)(E), the federal counterpart to OEC 801(4)(b)(E), also characterizes coconspirator statements as "not hearsay" rather than as an exception to the hearsay rule.

[21] Coconspirator statements are admissible under FRE 804(d)(2)(E) and do not violate the confrontation clause of the Sixth Amendment to the United States Constitution regardless of the availability of the declarant to give oral testimony at trial. *United States v. Inadi, supra,* 475 US at 400.

admissible without violation of the federal confrontation clause.

We have reviewed the other assignments of error made to the Court of Appeals and renewed before this court, and we find nothing that requires further discussion.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.