516

Argued and submitted February 26, 1993, convictions affirmed; remanded for resentencing February 23, respondent's motion for reconsideration filed March 4 allowed by opinion April 27, 1994
See 127 Or App 613 (1994)

## STATE OF OREGON,
*Respondent,*

*v.*

## JOHN LAYTON HARRIS,
*Appellant.*

## (CR90-551C; CA A72503)

869 P2d 868

Diane L. Alessi, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

Defendant appeals his convictions for murder and felon in possession of a firearm, ORS 163.115; ORS 166.270, and his sentence for the murder conviction. We affirm the convictions, and remand for resentencing.

■     Following a conviction, we review the evidence in the light most favorable to the state. *State v. Brown*, 310 Or 347, 800 P2d 259 (1990). In August, 1988, while defendant was incarcerated at the Oregon State Penitentiary (OSP), he met Rose and Paul Mitchell, a married couple. The Mitchells befriended defendant, and began visiting him frequently. At some point, defendant and Rose also established a romantic relationship.

During defendant's term at OSP, he inherited about $220,000. In July, 1989, he sent Rose a check for $150,000. He instructed her to use some of the money to improve the Mitchells' home and business, and to manage the rest at his direction. The Mitchells' house and ceramics business were in Pacific City, and they maintained a warehouse in McMinnville.

In July, 1990, defendant was released on parole when the Mitchells offered to "sponsor" him, allowing him to live and work with them. Around October, 1990, Rose developed the belief that Paul had sexually abused her granddaughter some years earlier. Thereafter, Rose frequently advocated Paul's murder. Defendant's involvement in those conversations is disputed. Rose claims that defendant strongly agreed, and assured her that if he could not get someone else to do it, he would kill Paul himself. She also claims that when she was considering divorcing Paul, defendant told her that they would "take care of things other ways." Defendant claims that he withdrew from the conversations whenever Rose began discussing murder.

Around Thanksgiving of 1990, Richard Hostetter, a friend of defendant's from prison, came to stay at the Mitchells' house. Defendant introduced him to a waitress at a local bar as his "hit man." While Hostetter was staying at the Mitchells' house, the conversations about killing Paul continued. Hostetter was a vigorous proponent of the murder.

On December 9, 1990, defendant and Hostetter drove to the Mitchells' warehouse in McMinnville, where Paul was preparing a ceramics order for shipment. The three exchanged greetings. Ten or fifteen minutes later, Hostetter drew a gun and fired at least twice. One bullet hit Paul in the abdomen. Another bullet grazed Paul and lodged in defendant's shoulder. Defendant and Paul both fell to the floor. Hostetter assisted defendant to stand up and to move towards the door. Defendant told Hostetter that Paul was still breathing. Hostetter went over to Paul and shot two bullets into Paul's head at close range, killing him.

Defendant and Hostetter left the warehouse and drove to Hostetter's mother's house in Dallas, stopping only for beer on the way. Defendant, Hostetter and Rose were arrested the following day.

Defendant was indicted for felon in possession of a firearm, conspiracy to commit murder and murder.[1] The trial court dismissed the conspiracy charge following the state's case-in-chief. Regarding the murder charge, defendant testified that, although he was present at the scene of the murder, he was surprised when Hostetter shot Paul, and did not assist Hostetter in the killing. The jury convicted defendant of felon in possession of a firearm and murder. The court sentenced him to life in prison with a 25-year minimum term for the murder.

Defendant's first assignment of error, which attacks the constitutionality of OEC 609, has been resolved against him. *State v. Minnieweather*, 99 Or App 166, 781 P2d 401 (1989).[2]

Defendant's second assignment of error contends that the trial court erred by overruling his hearsay objections to evidence presented during the state's rebuttal case. We consider the challenged evidence in three separate groups.

---

[1] Defendant was jointly indicted with Hostetter and Rose. Rose pleaded guilty to a charge of solicitation to commit murder. Hostetter was convicted, in a separate jury trial, of felon in possession of a firearm, conspiracy to commit murder and murder. *State v. Hostetter*, 125 Or App 491, 865 P2d 485 (1993).

[2] *State v. Busby*, 315 Or 292, 844 P2d 897 (1993), did not address the issue, because the court determined that it had not been adequately preserved for appellate review.

First, Sonja Davis testified that during a visit with her husband, Richard Davis (Davis), who was in jail, Davis told her that defendant and Rose were going to post $10,000 bail for him, and that, in return, he was to kill Paul.

In response to defendant's hearsay objection, the state contended that Davis' out-of-court statement was admissible as the declaration of a coconspirator. OEC 801(4)(b)(E).[3] The trial court agreed, and overruled defendant's objection.

■■ To introduce a statement under OEC 801(4)(b)(E), the proponent must establish by a preponderance of the evidence that: (1) there was a conspiracy in which both the declarant and a party were members; (2) the declarant made the statement during the course of the conspiracy; and (3) the statement was made in furtherance of the conspiracy. *State v. Cornell*, 314 Or 673, 677, 842 P2d 394 (1992). The trial court determines whether those requirements are met as a preliminary question of fact under OEC 104(1), and we review that determination for sufficiency of the evidence, accepting any reasonable inferences that the trial court could have made. 314 Or at 677-78.

■ Defendant contends that substantial evidence does not support the trial court's ruling that there was a conspiracy between defendant, Rose and Davis to kill Paul. Considering Sonja's statement in conjunction with the other corroborating evidence, including defendant's own testimony that he arranged to have Rose post Davis' bail, there was sufficient evidence for the trial court to conclude that Rose, defendant and Davis conspired to kill Paul.

■■ Defendant also argues that the trial court could not reasonably conclude that Davis' statement to Sonja was made in furtherance of the conspiracy. A statement is made in furtherance of a conspiracy if it is intended to advance the objectives of the conspiracy in some way. *State v. Cornell, supra*, 314 Or at 680. That requirement is satisfied if the

---

[3] OEC 801(4) provides that a statement is not hearsay if:

"(C)(b) The statement is offered against a party and is:

"* * * * *

"(E) A statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

statement is intended to strengthen a conspirator's resolve to carry out the conspiracy. 314 Or at 681. A trier of fact could infer that Davis told Sonja, his wife, about his plan for getting out of jail in order to further commit himself to the plan, or to obtain her reassurance or assent, or to attempt to draw her into the conspiracy. In that context, we cannot say that the trial court's conclusion that Davis' statement was made in furtherance of the conspiracy was unreasonable. The court did not err by overruling defendant's hearsay objection to that testimony.

■     The second group of challenged evidence consists of portions of two letters from Davis to defendant, and Sonja's testimony interpreting those letters.[4]

In response to defendant's hearsay objection, the state argued that the evidence was not hearsay, because it was being offered only to establish the contact and relationship between Davis and defendant, and not to prove the truth of the matter asserted. So limited, the evidence was not objectionable as hearsay. Defendant does not contend that the evidence should have been excluded on any other ground. Furthermore, we find nothing in the record to suggest that Sonja's interpretation of the letters was based on other than her own personal knowledge. The trial court did not err by overruling defendant's hearsay objection to the portions of the letters and to Sonja's interpretation of them.

■     Finally, defendant assigns error to admission of Sonja's testimony that defendant once indicated to her that he was a member of the "Aryan Brotherhood." Defendant's out-of-court statement is excluded from the hearsay rule of OEC 802, because it is his own statement. OEC 801(4)(b)(A). The trial court did not err by overruling defendant's hearsay

---

[4] The portions of the first letter that were admitted over defendant's objection were the salutation, "Hay Brother," the closing, "Stay out of shit!! Love's your sorry asses /s/ Skinnyman WFFW," and one passage, "I know you own me for life, right, [smiley face] Well, yah know what I kind of like that—So what know [now?]—??" The portions of the second letter that were admitted over defendant's objection were the salutation, "Howdy Brother's," and the closing, "Loves your sorry asses /s/ Skinnyman WFFW." The court admitted the remainder of the letters at defendant's request. Sonja testified that "WFFW" means "warlords forever, forever warlords," and that "warlords" is some sort of gang.

objection to that testimony. We affirm defendant's convictions.[5]

■   Defendant also assigns error to his sentence for the murder conviction. The trial court sentenced him to life in prison, "both pursuant to ORS 163.115(3)(a) and as a departure sentence pursuant to [the] sentencing guidelines," and to a 25-year minimum term under ORS 163.115(3)(b) and (c). A life sentence under ORS 163.115(3)(a) is reversible error. *State v. Morgan*, 316 Or 553, 856 P2d 612 (1993).

■   We turn to whether defendant's life sentence is a valid departure sentence. It is apparent from the trial court's alternative reliance on ORS 163.115(3)(a) and its imposition of a minimum term that it intended to impose an indeterminate life sentence, rather than a true life sentence. The "life sentence" here does not constitute a departure sentence under the guidelines.

■   We remand for resentencing with instructions to delete the sentence of life imprisonment and to impose a judgment for post-prison supervision for the remainder of defendant's life under OAR 253-05-004. Defendant's 25-year minimum term under ORS 163.115(3)(b) and (c) is lawful. *State v. Hostetter, supra* n 1.

Convictions affirmed; remanded for resentencing.

---

[5] Defendant's constitutional argument is not preserved. We do not consider it.