No. 206          April 3, 2024          675

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

VANESSA ROCHELLE BLUE,
aka Vanessa Rochelle Branton,
*Defendant-Appellant.*

Curry County Circuit Court
17CR58140; A177721

Cynthia Lynnae Beaman, Judge.

Argued August 10, 2023.

Matthew Blythe, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

### MOONEY, J.

Defendant appeals a judgment of conviction for two counts of unlawful use of a vehicle (UUV), ORS 164.135 (2017),[1] related to her use of a rented U-Haul truck. The sole issue on appeal is whether a photograph of the rental contract was admissible under OEC 1003. Defendant denies that she signed a U-Haul contract, and she assigns error to the trial court's ruling that admitted the photograph into evidence. She argues that OEC 1002, the "best evidence rule," required the state to produce the original contract to prove its contents and, further, that the photograph was not admissible as a duplicate under OEC 1003. We conclude that the trial court did not err, and we affirm.

We review a trial court's evidentiary rulings for errors of law, deferring to the trial court's underlying factual findings if there is evidence in the record to support them. *State v. Engle*, 278 Or App 54, 55, 373 P3d 1191, *rev den*, 360 Or 465 (2016).

This case was tried twice. The first trial ended in a hung jury. The second trial ended in the convictions now on appeal. The admissibility of the photograph under OEC 1002[2] and 1003[3] was raised and discussed in both trials. In

---

[1] The legislature amended ORS 164.135 in 2019, applicable to offenses committed on or after January 1, 2020. Or Laws 2019, ch 530, §1. We apply the 2017 version of the statute, which was in effect when defendant committed the offense, and which provided, in part, that:

"(1) A person commits the crime of unauthorized use of a vehicle when:

"(a) The person takes, operates, exercises control over, rides in or otherwise uses another's vehicle ***;

"*****

"(c) Having custody of a vehicle *** pursuant to an agreement with the owner thereof whereby such vehicle *** is to be returned to the owner at a specified time, the person knowingly retains or withholds possession thereof without consent of the owner for so lengthy a period beyond the specified time as to render such retention or possession a gross deviation from the agreement."

[2] OEC 1002 provides that:

"[t]o prove the content of a writing, recording or photograph, the original writing, recording or photograph is required, except as otherwise provided in ORS 40.550 to 40.585 or other law."

[3] OEC 1003 provides an exception:

"A duplicate is admissible to the same extent as an original unless:

ruling on the state's motion *in limine* at the second trial, the court indicated that it would admit the photograph as a duplicate[4] under OEC 1003. When offered by the state in its case-in-chief, the court overruled defendant's objections and received the photograph as evidence. We draw the pertinent facts from the record as it existed when the trial court admitted the photograph into evidence, in accordance with our standard of review.

Defendant rented a U-Haul truck in Albuquerque, New Mexico, on July 1, 2017. She provided her driver's license for identification purposes and paid $100 in cash and then drove the truck to Oregon and lived in it with her young daughter for approximately two weeks. Park rangers at Harris Beach State Park tagged the truck because it was illegally parked. A ranger ultimately concluded that someone was living in the truck and notified U-Haul. A police officer went to investigate and found defendant sitting in the driver's seat of the truck. Defendant told the officer that she had rented the truck in New Mexico for 30 days, with a return date of July 31, 2017. The officer contacted U-Haul, which reported that defendant had rented the truck for one day, for in-town use, and that the truck had been stolen. Defendant was arrested and charged with two counts of UUV.

To convict defendant of UUV, the state was required to prove that she "knowingly retain[ed] or with[held] possession" of the U-Haul truck "for so lengthy a period beyond the specified time as to render such retention or possession a gross deviation from the agreement." ORS 164.135(1)(c). To prove the terms of the rental agreement—in particular, the "specified time" for return of the truck—the state offered

"1) A genuine question is raised as to the authenticity of the original; or

"2) In the circumstances it would be unfair to admit the duplicate in lieu of the original."

[4] OEC 1001 (2) defines an "original" as "the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it[,]" and OEC 1001 (1) defines a "duplicate" as:

"a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, by mechanical or electronic re-recording, by chemical reproduction, by optical imaging or by other equivalent techniques that accurately reproduce the original, including reproduction by facsimile machines if the reproduction is identified as a facsimile and printed on nonthermal paper."

a photograph of the U-Haul rental contract as a duplicate under OEC 1003. Ross, a U-Haul area field manager in Oregon, testified that he had asked an employee of the Albuquerque U-Haul store to send him a photograph of the signed contract because the contract on the U-Haul database was unsigned. Ross testified that the signed contract was "retained at the Albuquerque location" and that an unsigned copy was uploaded to the national database at "the time of transaction." The state did not call the Albuquerque employee as a witness at trial, and it did not offer the original contract into evidence. Defendant sought to exclude the photograph, arguing that she did not sign a U-Haul contract and that the signature in the photograph was not hers. The court denied her motion.

On appeal, defendant argues that a genuine question exists as to the authenticity of the original contract that is depicted in the photograph, and that OEC 1003 thus required the state to produce the original contract. The state responds that defendant did not raise a genuine question as to the authenticity of the original contract "because her assertions of forgery or fraud did not require the original rental agreement to discern," and, further, that "the trial court would have been able to discern from the photograph" whether the original contract contained defendant's signature. The state contends, in the alternative, that any error was harmless.

The parties point to various federal cases concerning FRE 1003, the federal rule on which OEC 1003 is modeled. Our discussion, thus, includes some of those federal cases and related resources because we are permitted to "look to federal cases applying the federal rule [from which the Oregon rule is derived] as interpretive guides." *State v. Cornell*, 109 Or App 396, 400, 820 P2d 11 (1991), *aff'd*, 314 Or 673, 842 P2d 394 (1992). The general rule is that to prove the contents of a writing, the original writing is required, unless a duplicate is available, which may be used in place of the original so long as there is no genuine question raised about the authenticity of the original writing, and so long as it would not otherwise be unfair to do so. OEC 1002, OEC 1003. The burden of demonstrating that there is a genuine

issue as to the authenticity of the original is on the party opposing introduction of the duplicate. *See United States v. Chang An-Lo*, 851 F2d 547, 557 (2d Cir 1988), *cert den*, 488 US 966 (1988) (explaining burden under identical language of FRE 1003).

The best evidence rule is designed to "secure the most reliable information as to the contents of documents when those contents are disputed." *State v. White*, 4 Or App 151, 156, 477 P2d 917 (1970). Nevertheless, accurate duplicates are often admitted instead of the original, at least in part, because:

> "Requiring the original, or accounting for it, places costs, burdens of planning, and hazards of mistake upon the litigants; these costs are probably not worth imposing when risks of inaccuracy are reduced to a minimum by the offer of an accurate copy."

Robert P. Mosteller, *et al.*, 2 *McCormick on Evidence* § 236 (8th ed 2022).[5] A duplicate is "not as desirable as the original writing" when requiring the original serves "the ancillary purpose of fraud prevention" because "even copies produced by photographic or xerographic printing processes are not totally free of the risk of alteration that might not be discernable." *Id.* Proper application of the rule helps prevent the "loss of" "fine detail" associated with original writings "through mistransmission," which is a "basic policy objective of the rule." *Id.* § 233. For example, the original document "may contain, and the copy may lack, such features as handwriting impressions, type of paper, and the like as may afford the opponent valuable means of objecting to admissibility." Jack B. Weinstein & Margaret A. Berger, 6 *Weinstein's Federal Evidence*, § 1003.03 [4] (2d ed 2024).

The question, still not addressed in Oregon case law, is what it takes to raise a "genuine question of authenticity" under OEC 1003. Quoting directly from *Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P.*, 614 F Supp 2d 481, 485 (SDNY 2009), the state argues that federal courts find that a "genuine question" of the authenticity of an original is raised where "the original itself might provide evidence of forgery

---

[5] *McCormick on Evidence* discusses FRE 1003, which is identical to OEC 1003. *See* OEC 1003 Commentary (1981).

or fraud that cannot be discerned from a copy." Defendant does not disagree, but she denies signing the original contract, and contends that examination of the original contract may well provide evidence that it was forged.

Mere speculation that a document is inaccurate is not sufficient to create a genuine question of authenticity. *See*, *e.g.*, *Chang An-Lo*, 851 F2d at 557 (defendant failed to raise a genuine issue of authenticity as to original phone logs where he "simply speculate[d] that there is no assurance that the proffered document is actually a duplicate of the original"); *United States v. Childs*, 5 F3d 1328, 1335 (9th Cir 1993), *cert den*, 511 US 1011 (1994) (rejecting argument under FRE 1003 that "the opportunity for mischief" made it unfair to admit photocopied files because there was nothing in the record suggesting that the records had been altered).

Where there is more than speculation, however, courts have held that FRE 1003 requires the proponent of the writing to offer the original. *See*, *e.g.*, *Carroll*, 614 F Supp 2d at 485 (explaining that an original "may contain, and the copy may lack, such features as handwriting impressions, type of paper, and the like as may afford the opponent valuable means of objecting to admissibility. For example, the original may be a pasted-together version that gives an entirely different impression than a smooth photocopy." (Internal quotation marks omitted.)); *Opals on Ice Lingerie v. Bodylines, Inc.*, 320 F3d 362, 371 (2d Cir 2003) (concluding that a genuine question of authenticity existed where a document was alleged to have been whited out, and examination of the document would have yielded information of the authenticity of the document to the jury).

Defendant relies on *Sisters of St. Joseph v. Wyllie*, 120 Or App 474, 852 P2d 941 (1993), to argue that her "offer of proof and trial testimony was sufficient to create a genuine question as to the *authenticity of the original* U-Haul contract in this case." She argues that "the standard for summary judgment—whether there is a 'genuine question of material fact'—mirrors the requirement in OEC 1003 that there be a 'genuine question as to the authenticity of the original' before the duplicate is barred[.]" We are not convinced by defendant's argument. *Sisters of St. Joseph* was a civil collection

case filed by a hospital against a former patient seeking payment for medical services rendered to him. We held that summary judgment should not have been granted to the hospital on the basis of "an unauthenticated consent form signed by an unknown person" when the defendant denied signing it himself, and when the form was dated several days after the hospital admission. *Id.* at 477. We concluded that the defendant had raised a genuine issue regarding consent to treatment—which was a material fact in dispute—and that he was entitled to have the case presented to and decided by a jury. *Id.* We did not decide whether a duplicate of the consent form would have been admissible at trial under OEC 1003. And we did not decide whether a denial alone would have been sufficient under OEC 1003 to raise a genuine question about authenticity such that the duplicate would be excluded and the original required. The lesson from *Sisters of St. Joseph* is that genuine issues of material fact are for the jury to decide. Here, defendant was free to argue—and, in fact, did argue—that the jury should consider, as it weighed the evidence, the state's failure to produce the original contract and defendant's own testimony denying that she signed the contract depicted in the state's exhibit.

We find no support in the federal cases, or in *Sisters of St. Joseph*, for a rule that a party may raise a genuine question as to the authenticity of a document under OEC 1003 simply by denying that they signed the document. The contract terms reflected in the photograph offered by the state appear to be the same as the contract terms reflected in the unsigned contract pulled from the U-Haul database and offered by defendant. The primary difference is that the former contains a signature, and the latter does not. Whether defendant signed the contract is a question of fact for the jury. There is evidence from which a reasonable jury could have decided that question either way. Exclusion of the duplicate solely because defendant denied that she signed it would have removed that evidence from the jury's consideration, essentially usurping the jury's role and weighing that piece of evidence for them. The trial court did not err in denying defendant's motion to exclude.

Affirmed.