No. 47 November 25, 2025 439

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

VANESSA ROCHELLE BLUE,
aka Vanessa Rochelle Branton,
*Petitioner on Review.*

(CC 17CR58140) (CA A177721) (SC S071076)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 6, 2025, at University of Oregon Law School, Eugene, Oregon.

Matthew Blythe, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Emily Nichole Snook, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

FLYNN, C.J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____
* Appeal from Curry County Circuit Court, Cynthia Lynnae Beaman, Judge. 331 Or App 675, 547 P3d 167 (2024).

**FLYNN, C.J.**

Defendant challenges her conviction for unauthorized use of a vehicle, which was based on evidence that defendant had signed a one-day rental contract for a U-Haul truck and continued to use it for more than three weeks. *See* ORS 164.135 (2017) (specifying elements of unauthorized use of a vehicle). At issue is the trial court's decision to admit a photograph of a rental agreement that purportedly bears defendant's signature, but which defendant denied having signed. The dispute focuses on the "best evidence" rule, OEC 1002, which generally requires a party to "prove the content of a writing, recording or photograph" by offering the original, and particularly on one of the exceptions to the "best evidence" rule, OEC 1003, which generally makes a duplicate "admissible to the same extent" as its original. That exception does not apply, however, if "[a] genuine question is raised as to the authenticity of the original."[1] OEC 1003(1). The meaning of that limitation is at issue here. The trial court ruled that defendant had failed to raise a "genuine question *** as to the authenticity of the original" and allowed the state to rely on the photograph under OEC 1003, and the Court of Appeals affirmed. *State v. Blue*, 331 Or App 675, 680, 547 P3d 167 (2024).

We allowed review and now reverse. Under OEC 901, authentication requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." As we will explain, we conclude that a party who opposes the admission of a duplicate under OEC 1003(1) raises a "genuine question" as to the authenticity of the original when there is evidence sufficient to support a finding that the matter in question—the original—is *not* what the proponent claims it to be. And because we conclude that defendant offered testimony from which a jury could find that her signature on the original had been forged, we hold that the trial court erred in admitting the photograph in lieu of the original contract under OEC 1003. We also conclude that the error was not harmless. Accordingly, we reverse.

---

[1] The duplicate exception set out in OEC 1003 also does not apply if in "the circumstances it would be unfair to admit the duplicate in lieu of the original." OEC 1003(2).

## I.  FACTS AND PROCEDURAL BACKGROUND

Defendant rented a U-Haul truck in Albuquerque, New Mexico on July 1, 2017, from a Chevron gas station that also served as an independent U-Haul dealer. She presented her driver's license, paid $100 in cash, and then drove the U-Haul to Oregon where she lived in it for approximately two weeks while she worked at a new job. The truck was eventually reported stolen, and it was spotted in late July parked at a rest area on the Southern Oregon coast. At the time, defendant was sitting in the driver's seat, and her personal belongings were in the back of the truck. Defendant was charged with two counts of unauthorized use of a vehicle (UUV).[2]

This case arises out of a retrial of the charges against defendant, after the first trial ended in a hung jury. In the first trial, defendant testified that she had asked for a 30-day rental, made a $100 deposit, and was never presented with a contract. The state introduced a photograph of a signed U-Haul contract. On cross-examination, defendant testified, "I didn't sign no contract." When asked about a signature on the exhibit, she stated, "That's not my signature."

Before the retrial, the state requested a pretrial ruling that the photograph of the signed U-Haul contract would be admissible. The concern stemmed from testimony in the first trial that the photograph did not depict a document maintained in the U-Haul database but instead had been taken and sent from the Chevron gas station in New Mexico for the prosecutor to use as evidence at trial.[3] Given

---

[2] The relevant version of the UUV statute at the time defendant committed the offense provided:

"(1)  A person commits the crime of unauthorized use of a vehicle when:

"(a)  The person takes, operates, exercises control over, rides in or otherwise uses another's vehicle *** without consent of the owner; [or]

"*****

"(c)  Having custody of a vehicle *** pursuant to an agreement with the owner thereof whereby such vehicle *** is to be returned to the owner at a specified time, the person knowingly retains or withholds possession thereof without consent of the owner for so lengthy a period beyond the specified time as to render such retention or possession a gross deviation from the agreement."

ORS 164.135 (2017).

[3] The state offered testimony from a field manager for U-Haul to establish that he had received the photograph of the contract from someone at the Chevron

the source of the photograph, the trial court questioned whether the state should be required to offer the original as the "best evidence" of the contents of the document, or whether the exception in OEC 1003 made the photograph admissible to the same extent as the original. Defendant argued that the exception in OEC 1003 did not apply, because there was a genuine question as to the authenticity of the original. Defendant supported her argument by pointing to her testimony in the first trial that she had not signed the agreement and that the signature on the photograph was not her signature. The trial court ruled that the exception under OEC 1003 applied and that defendant's concerns about fraud could be addressed through testimony at trial.[4]

During trial, the Oregon U-Haul field manager testified that the photograph of the signed contract was a reproduction of a document kept at the independent U-Haul dealer in Albuquerque, New Mexico. The photograph itself depicts a printed contract for an "In-Town Rental" from the Albuquerque Chevron, with a "Rental Due Date" one day after the "Rental Out Date" and defendant's name typed and signed at the bottom. Defendant testified, as she had in the first trial, that she had not been shown the contract in the photograph and that it was not her signature at the bottom of the document. She explained that she had rented the truck for the purpose of driving to Oregon. Her understanding was that the rental was for 30 days, but she also testified that she had experienced some trouble communicating with the U-Haul dealer due to language differences. Defendant acknowledged that she had thought it was odd to be given a truck with no contract, but she testified that the dealer explained that the printer was broken so no contract could be printed out. To support her claim that the New Mexico dealer had faked the signed one-day rental contract, defendant offered evidence that the only record in the U-Haul database was an unsigned version of the rental contract in

station, which also served as an independent U-Haul dealer in Albuquerque, New Mexico.

[4] Another rule, OEC 1003-1, permits the admission of reproductions of business records, but the Oregon U-Haul field manager was not able to testify to the business practices of the independent dealer at the Chevron in New Mexico. The state emphasized in the Court of Appeals that the trial court's ruling allowed the duplicate based on OEC 1003, and not OEC 1003-1.

the photograph. In his closing argument, defense counsel argued that the lack of a signature in the U-Haul database was evidence that the independent dealer in Albuquerque had not actually given defendant a contract to sign, and he emphasized that nobody with personal knowledge had testified regarding the signed contract except for defendant who had denied signing it. The jury found defendant guilty of UUV, and defendant appealed.

In the Court of Appeals, defendant again argued that the photograph was not the "best evidence" of the contents of the original document—specifically of the purported signature—and was not admissible in place of the original under OEC 1003(1), because defendant had raised a "genuine question" as to the authenticity of the original document. Defendant noted that the standard under OEC 1003(1) is an issue of first impression for Oregon appellate courts and proposed that what an opponent must demonstrate to raise a "genuine question as to the authenticity" should mirror the summary judgment standard, which asks whether the opponent has raised a "genuine issue as to a material fact." *See* ORCP 47 C (setting out summary judgment standard). She argued that her prior testimony that she had not signed the contract raised a genuine question as to the authenticity of the original.

The Court of Appeals disagreed. The court relied on federal cases decided after the Oregon Evidence Code was enacted that applied the analogous federal rule of evidence for the proposition that "mere speculation" does not raise a genuine question as to authenticity. *Blue*, 331 Or App at 680-81. And the court concluded that defendant needed to offer more than testimony that she did not sign the contract in order to raise a "genuine question" as to its authenticity. *Id.* at 681.

## II.   DISCUSSION

The ultimate issue in this case is whether defendant raised a "genuine question" as to the authenticity of the original contract, within the meaning of OEC 1003(1), with testimony that she had never signed the contract and that it was not her signature on the photographed contract. The provisions of the Oregon Evidence Code are statutes,

and, when construing statutes, our task is to determine the meaning that the legislature intended by considering the text, in context, as well as any legislative history that informs the question. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

The text of OEC 1003 specifies, in full:

"A duplicate is admissible to the same extent as an original unless:

"(1)   A genuine question is raised as to the authenticity of the original; or

"(2)   In the circumstances it would be unfair to admit the duplicate in lieu of the original."

The significance of an original is addressed in OEC 1002, the so-called "best evidence" rule, which provides:

"To prove the content of a writing, recording or photograph, the original writing, recording or photograph is required, except as otherwise provided in [OEC 1001 to 1008] or other law."

Thus, OEC 1003 appears to create a default exception to the "best evidence" rule—making "a duplicate * * * admissible to the same extent as the original"—although that exception itself has exceptions, including the exception at issue here—that is, when "[a] genuine question is raised as to the authenticity of the original." OEC 1003(1).

Both the best evidence rule of OEC 1002 and the exception of OEC 1003 are original provisions of the Oregon Evidence Code, which the legislature adopted in 1981. Or Laws 1981, ch 892, §§ 72, 73. To understand both the rule and the exception in OEC 1003(1), it is helpful to appreciate the statutory and common-law context out of which those provisions of the Oregon Evidence Code arose. *See Montara Owners Assn. v. La Noue Development, LLC*, 357 Or 333, 341, 353 P3d 563 (2015) (explaining why the context for interpreting a statute's text includes the preexisting law).

Prior to the adoption of the Oregon Evidence Code, a predecessor to OEC 1002 specified that "[t]he original writing shall be produced and proved" unless certain statutory exceptions applied. *Former* ORS 41.610 (1953), *repealed by* Or Laws

1981, ch 892, § 98. Those exceptions described circumstances under which something other than the original writing itself could be used as "evidence of the contents of a writing." *Former* ORS 41.640(1) (1953), *repealed by* Or Laws 1981, ch 892, § 98. Our case law had described that predecessor statute as a codification of the common-law "best evidence" rule. *Lumbermens Mut. Cas. v. Jamieson*, 251 Or 608, 610-11, 447 P2d 384 (1968). We had explained that "'the purpose of the best evidence rule is to secure the most reliable information as to the contents of documents when those contents are disputed.'" *Dean Vincent, Inc. v. Stearns*, 276 Or 533, 537, 555 P2d 448 (1976) (quoting *State v. White*, 4 Or App 151, 156, 477 P2d 917 (1970)); *see also State v. Nano*, 273 Or 366, 368, 543 P2d 660 (1975) (explaining that "[m]ost scholars believe" that one purpose of the rule is "preventing fraud"). *Nano* emphasized that the best evidence rule "prevent[s] a wilful or unintentional mistransmission of the contents of the writing," which is especially important for "operative or dispositive instruments." 273 Or at 368. When, however, "there is no good faith dispute [about] the accuracy of the document presented," we had reiterated the caution of earlier decisions that "the 'mystical ideal' of seeking the original will not be pursued." *Dean Vincent, Inc.*, 276 Or at 537 (quoting *White*, 4 Or at 156). For example, the rule did not apply to the contract offered in evidence in *Dean Vincent, Inc.*, because there was "no real dispute as to the execution or the terms of the agreement." *Id*.

When the legislature adopted the Oregon Evidence Code in 1981, it again codified Oregon's strong preference for an original through the rule and exceptions set out at OEC 1002 to 1007.[5] Collectively, the rules create a framework under which, "[t]o prove the content of a writing, recording or photograph, the original writing, recording or photograph is required," unless one of the specified exceptions is met. OEC 1002.

With that context, we turn to the particular exception at issue here: "A duplicate is admissible to the same extent as an original" unless a "genuine question is raised as to the authenticity of the original." OEC 1003(1). A "duplicate" is defined as

---

[5] OEC 1003-1 was a later addition. Or Laws 1995, ch 760, § 3.

> "a counterpart produced by the same impression as the original, or from the same matrix, or by means of *photography*, including enlargements and miniatures, by mechanical or electronic re-recording, by chemical reproduction, by optical imaging[,] or by other equivalent techniques that accurately reproduce the original * * *."

OEC 1001(1) (emphasis added). Thus, OEC 1003 captures the concept that a "counterpart" of the original produced through techniques that "accurately reproduce the original" is generally just as good as the original when trying to prove the content of the original. But there are exceptions.

There is no dispute here that the state's purpose in admitting the photograph was to "prove the content of a writing"—the terms of a contract for a truck rental and defendant's signature on it. There also is no dispute that the photograph the state offered meets the definition of a "duplicate" for purposes of the exception set out in OEC 1003.[6] Rather, as described above, the dispute focuses on whether "[a] genuine question" was raised as to "the authenticity of the original," so as to make the exception to the "best evidence" rule for duplicates under OEC 1003 inapplicable. Thus, we turn to the meaning of those phrases, beginning with "authenticity of the original."

### A.  *Authenticity of the Original*

In general, "authenticity" refers to the requirement for admitting evidence that the offered item "is what its proponent claims." OEC 901(1). Here, the state contended that the original was a contract that defendant signed for the New Mexico rental. OEC 901(1) explains that

> "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

---

[6] To account for technological advancements, when data is stored on a computer or similar device the definition of "original" includes "any printout or other output readable by sight, shown to reflect the data accurately." OEC 1001(2). No party contends that the photograph of the signed contract at issue here would qualify as an original under that definition, because the state offered the photograph as evidence of a paper document to claim that defendant had physically signed it.

The requirement that evidence is what the proponent claims it to be is a question of fact and a condition of the evidence being relevant. *See* Legislative Commentary to OEC 901, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 901.02, 951 (7th ed 2020) (hereinafter *Oregon Evidence*) (explaining that "[t]his requirement of showing authenticity or identity falls in the category of relevancy dependent upon fulfillment of a condition of fact"). Whether proffered evidence is authentic is a question for the factfinder to resolve, unless there is insufficient evidence offered that to support a finding of authenticity. *See id*. (explaining that the requirement of relevance "is governed by the procedure set forth in subsection (2) of section 5 (Rule 104) of this Act"); OEC 104(2) ("When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."). One of the many ways for a party to authenticate a piece of evidence is to present "[t] estimony by a witness with knowledge that a matter is what it is claimed to be." OEC 901(2)(a).

Under OEC 1003(1), the question is whether there is a dispute as to authenticity of the *original*. Thus, as we turn to what it means to raise a "genuine question" as to authenticity, we do so with the understanding that the "question" relates to whether the original document is what the proponent claims it to be, which ultimately is a determination for the factfinder if there is evidence sufficient to support a finding of authenticity. OEC 901(1).

B.  *Genuine Question*

The dispute in this case is focused on what the legislature intended to require with the specification that raising a "*genuine* question" as to authenticity of the original means that the proponent cannot rely on OEC 1003 to avoid producing the original.[7]

---

[7] The Court of Appeals seems to have assumed that the exception in OEC 1003 is the only way that the state could have offered evidence that defendant had signed the contract. *See Blue*, 331 Or App at 681 (reasoning that, "[e]xclusion of the duplicate solely because defendant denied that she signed it would have removed that evidence from the jury's consideration"). But a conclusion that the offered evidence was not admissible under OEC 1003 does not mean that the state lacks other means to offer the evidence. The record below does not support

Defendant argues that an opponent raises a "genuine question" as to authenticity by presenting evidence from which a reasonable jury could infer that the original is not what the proponent contends it to be. Defendant points by analogy to the standard for summary judgment under ORCP 47 C, which turns on whether there is a "genuine issue" as to a material fact. In addressing the predecessor to that rule, *former* ORS 18.105 (1977), *repealed by* Or Laws 1979, ch 284, § 199, this court explained that "courts generally read 'genuine issue' to mean 'triable issue'" and that, "[b]efore a party has a triable issue, he or she must have sufficient evidence to be entitled to a jury determination." *Seeborg v. General Motors Corporation*, 284 Or 695, 700, 588 P2d 1100 (1978) (applying *former* ORS 18.105 (1977)). According to defendant, the legislature's use of the same term—"genuine"—to describe disputes as to the factual question of authenticity in OEC 1003 is significant. By analogy, defendant contends, if there is a basis for the jury to find that an original writing, recording, or photograph is not authentic, then there is a genuine question as to authenticity that makes the default exception in OEC 1003, permitting duplicates to be admissible to the same extent as an original, inapplicable.

The state argues that raising a "genuine question" under OEC 1003(1) requires a "substantial showing," such that a factfinder would be compelled to find that the original is *not* authentic.[8] The state supports its proposed rule by relying on federal case law and treatises, because the legislative history of OEC 1003 indicates that it was modeled on the federal rule.

In other words, the state and defendant part company on the question of what happens when there is conflicting evidence from which a jury could find in favor of either party on the question of the authenticity of an original

---

an assumption that the state is unable to produce the original. Nor does it suggest that the state is unable to offer testimony of a witness with knowledge sufficient to lay a foundation for admitting the photograph under OEC 1003-1 as a duplicate of a business record maintained by the Chevron station in the ordinary course of its business.

[8] Elsewhere in its brief the state proposes a standard that comes close to matching the standard that defendant proposes—that, "[t]o raise a genuine question, the party must show that the original is needed to assist the factfinder with resolving a question of authenticity."

writing, recording, or photograph. According to defendant, if there is evidence from which the jury could find that the original is not what the proponent claims it to be, then the jury should be allowed to make that determination by examining the original. But, according to the state, OEC 1003 allows the proponent to rely on a duplicate to prove the content of a writing, recording, or photograph absent proof that would compel the jury to find the original is not what the proponent claims it to be. The text, context, and legislative history of OEC 1003 persuade us that defendant's understanding better captures the standard that the legislature likely intended.

Turning first to the terms themselves, the legislature did not define the phrase "genuine question." But both terms are words of common usage, and we often presume a legislative intent to give such words their ordinary meaning. *Brown v. GlaxoSmithKline, LLC*, 372 Or 225, 231, 548 P3d 817 (2024). In ordinary usage, a genuine question has some basis for being asked and is not abstract or frivolous. *See Webster's Third New Int'l Dictionary* 948 (unabridged ed 2002) (defining "genuine" as "having a real existence : conforming to reality : not abstract or frivolous"); *id.* at 1863 (defining "question" as "a subject or aspect that is in dispute, open for discussion, or to be inquired into : ISSUE"; "something the correctness or existence of which is open to doubt"). In the context of OEC 1003, that plain meaning suggests that a "genuine question" as to the authenticity of the original refers to a fact-based reason for contending that the original is not what the proponent claims it to be. And, given that the question of authenticity is a question for the jury if there is "evidence sufficient to support a finding that the matter in question is what its proponent claims," OEC 901, the plain meaning suggests that raising a genuine question requires the opponent to point to some evidence that would permit the jury to agree with the opponent that the original is not what the proponent claims it to be.

We agree with defendant that the phrase "genuine question" would seem to describe a standard that is analogous to the longstanding standard for granting a summary judgment—"a genuine issue as to any material fact"—which

required "sufficient evidence to be entitled to a jury determination" of the fact. *Seeborg*, 284 Or at 700; *former* ORS 18.105 (1977); ORCP 47 C (1980). But this is not a case in which we presume that the legislature intentionally borrowed the summary standard when adopting OEC 1003.[9] Rather, we focus on text and context for OEC 1003. That examination persuades us that the standard the legislature intended courts to apply in determining whether there is a "genuine question" as to authenticity of the original is a standard that we can understand to be analogous to whether a party has raised a "genuine" issue regarding a "material fact" for purposes of opposing summary judgment, or other motions—such as a directed verdict—that require the court simply to determine whether there is "sufficient evidence" to entitle the party to have a jury decide the fact at issue. *See Jones v. General Motors Corp.*, 325 Or 404, 413, 939 P2d 608 (1997) (explaining that the summary judgment focus on "sufficient evidence" to allow the jury to decide the factual issues "has led both courts and commentators to compare the motion for summary judgment to the motion for a directed verdict" (internal quotation marks omitted)).

In addition to the common meaning of "genuine," the broader statutory context suggests that the legislature intended a "genuine question" as to the authenticity of an original to exist when there is some evidence that would permit the jury to find that the original is not what the proponent claims it to be. Turning to that context, we reiterate that, collectively OEC 1002 through 1008 define the requirements of the "best evidence" rule. OEC 1002 sets out the general principle that the original must be produced to prove the content of a writing, recording, or photograph, and OEC 1003 through 1007 identify circumstances under which evidence other than the original is admissible in lieu of the original. Together OEC 1002 and 1003 serve the purpose of

---

[9] Although we often presume that the legislature enacts or amends statutes with an awareness of controlling precedent interpreting the pertinent statutory wording, this court usually only does so when the word in question is used in *related* statutes. *Polacek and Polacek*, 349 Or 278, 284, 243 P3d 1190 (2010). An evidentiary rule and a rule of civil procedure are not inherently related, and we are unwilling to presume that the legislature intentionally incorporated the summary judgment standard.

"preventing a wilful or unintentional mistransmission" of "operative or dispositive instruments." *Nano*, 273 Or at 368.

The state's contention that raising a genuine question as to authenticity of an original means establishing that a jury would be compelled to find that the original is *not* authentic undermines the authentication requirement, because evidence that is conclusively not authentic should be excluded altogether. The state's proposal would reduce OEC 1003(1) to the essentially meaningless proposition that, when the *original* fails to satisfy the condition precedent for relevance—authenticity—the *duplicate* also is not relevant. And it undermines the best evidence principle, because it ignores the code's preference that the jury consider the original when resolving factual questions, which include whether the original is authentic. If a duplicate were to be admitted as the best evidence of the contents of an original when there is a genuine question that the original is what it purports to be, the factfinder is left to resolve disputes about the contents without the best evidence of those contents. Text and context, thus, support defendant's contention that, when there is evidence from which a jury could find that an original is not what it purports to be, OEC 1003(1) maintains the preference established by OEC 1002 that the original is the best evidence to prove the content.

The legislative history for the code confirms that the best evidence rules, collectively, were intended to reduce the risk that a jury would be basing its decision on fraudulent or otherwise inaccurate evidence. As indicated above, OEC 1003(1) was enacted in 1981 as part of the Oregon Evidence Code. Or Laws 1981, ch 892, §73. The code was a product of the 1979-81 Interim Joint Committee on the Judiciary, and the work product of that committee was reflected in House Bill (HB) 2030 introduced in the 1981 session of the legislature. *See State v. Jancsek*, 302 Or 270, 278, 280, 730 P2d 14 (1986) (explaining history). The Interim Committee, in turn, had relied on earlier work of the Advisory Committee on Evidence Law Revision, which had submitted a proposed new Oregon Evidence Code accompanied by an extensive commentary to the Interim Committee in 1979. *State v. Carr*, 302 Or 20, 25 n 2, 725 P2d 1287 (1986). The Interim

Committee prepared its own updated code and commentary, which was presented as an exhibit to the 1981 House and Senate committees to which the bill was referred. *Id.* Finally, those committees produced what the chairs referred to as the "official commentary" to accompany the new evidence code. *Jancsek*, 302 Or at 280 (explaining that the commentary was denominated by the chairpersons of the respective committees as the "official commentary"). Although the 1981 Conference Committee Commentary was not adopted by the entire Legislative Assembly, this court has consistently turned to it for guidance in interpreting the evidence code. *State v. Serrano*, 346 Or 311, 324, 210 P3d 892 (2009) (explaining that, although the 1981 Conference Committee "Commentary is not an official part of the Oregon Evidence Code, it nonetheless provides highly useful background regarding each rule and guidance to courts and attorneys in interpreting [the code]" (internal quotation marks omitted)).

Then-judge Richard Unis, who led the 1981 Interim Committee, explained to legislators that OEC 1001, which defines how "duplicate" and "original" are used throughout the best evidence provisions, "makes it clear" that the original is required "only when there is a genuine issue as to material fact, for example, suppose there is a question of fraud." Testimony, Joint Committee on the Judiciary, Subcommittee on Evidence, July 1, 1980, Tape 18, Side B (statement of then-Judge Richard Unis).

Similarly, the commentary reflects the concern with preventing fraud. The commentary specifies that OEC 1003 was "consistent with current Oregon law." Legislative Commentary to OEC 1003, *reprinted in Oregon Evidence*, § 1003.02, 1009. And when describing Oregon law, the commentary specifically refers to this court's decision in *Nano* and the Court of Appeals' decision in *White*. *Id.*; Legislative Commentary to OEC 1002, *reprinted in Oregon Evidence*, § 1002.02, 1004. Although both cases ultimately turned on the concept now captured in the second paragraph of OEC 1003—that a duplicate is admissible to the same extent as an original unless it would be "unfair" to treat it as such—both cases also emphasize that an original may be required

when there are concerns that the offered evidence is not what the proponent claims it to be. *See Nano*, 273 Or at 368 (explaining that "[m]ost scholars believe" that one purpose of the rule is "preventing fraud"); *White*, 4 Or App at 155-56 (explaining that, when it appears that "what is called the secondary evidence is clearly equal in probative value to what is called the primary proof, and that fraud or imposition, reasonably, is not to be feared, the reason upon which the best evidence rule rests ceases").

Nevertheless, the state contends that the legislature's reliance on the comparable federal rules of evidence supports its proposal that an objection to admission of a duplicate under OEC 1003(1) requires a showing that a factfinder would be compelled to find that the original is *not* authentic. Because Oregon adopted the wording in OEC 1003(1) verbatim from the initial version of FRE 1003,[10] any pertinent history of FRE 1003(1) or cases construing it prior to 1981 would inform our understanding of legislative intent. *See McKean-Coffman v. Employment Div.*, 312 Or 543, 550, 824 P2d 410 (1992) (explaining that, when Oregon adopts federal wording virtually verbatim, federal legislative history pertaining to that wording is persuasive in interpreting a similar Oregon statute); *Computer Concepts, Inc. v. Brandt*, 310 Or 706, 714 nn 7 & 8, 801 P2d 800 (1990) (noting that federal legislative history and federal cases construing a federal act are persuasive when interpreting a similar Oregon statute).

But we have identified neither federal cases predating the adoption of the Oregon Evidence Code nor indications in the adoption history of the Federal Rules of Evidence that would have led the legislature to understand an objection to a duplicate under FRE 1003(1) to require conclusive evidence that an original is *not* authentic. Indeed, the cases that defendant cites suggest that the federal courts were employing a standard much like that suggested by the text of OEC 1003. *United States v. Georgalis*, 631 F2d 1199, 1205

---

[10] OEC 1003's wording is identical to that in FRE 1003 when Congress adopted the Federal Rules of Evidence. FRE 1003 (1975). In 2011, the language in FRE 1003 was restyled to be more easily understood and consistent with other evidence rules. FRE 1003 Advisory Committee Notes, 2011 Amendments. The changes to FRE 1003 were intended to be stylistic only. *Id.*

(5th Cir 1980), *reh'g den*, 636 F2d 315 (5th Cir 1981) (describing requirement for opposing party to show that there is a genuine issue "as to the authenticity of the unintroduced original, or as to the trustworthiness of the duplicate, or as to the fairness of substituting the duplicate for the original"); *United States v. Enstam*, 622 F2d 857, 866 (5th Cir 1980), *cert den*, 450 US 912 (1981) (evaluating objection only to accuracy of the duplicate).[11] Similarly, there is no indication in the federal legislative history that would have suggested to the 1981 Oregon legislature that FRE 1003(1) required conclusive evidence that an original is not authentic. *See* FRE 1003 Advisory Committee Notes on 1972 Proposed Rules, *reprinted in* 56 FRD 183, 343 (1972) (explaining rule by merely tracking the statutory standard that, "if no genuine issue exists as to authenticity and no other reason exists for requiring the original, a duplicate is admissible under the rule").

In sum, we find that the text, context, and legislative history show that a genuine question under OEC 1003(1) is raised when an opponent is able to make an evidentiary showing from which a reasonable jury could find that the original is not authentic—that is, not what the proponent claims it to be. When a jury could resolve the question of authenticity either way, OEC 1003(1) retains the established preference that the original is the best evidence from which the jury should resolve disputes regarding the contents of the original. We emphasize that the Oregon Evidence Code contains other exceptions to the best evidence rule, but OEC 1003(1) is the only provision at issue in this case.

---

[11] The state primarily relies on one federal treatise that suggests raising a "genuine question" under the federal rule would require evidence that would compel the jury to find that the evidence is not authentic. *See* David W. Louisell and Christopher B. Mueller, 5 *Federal Evidence* §§ 575-77, 439-459 (1st ed 1981) (suggesting that FRE 1003 requires "cogent and compelling evidence" of the sort that would require any reasonable person to "find that the original is not authentic"). But the treatise cites no cases employing that standard, and there is no basis to conclude that the opinion expressed in that treatise—which appears to have been published in November 1981—would have been available to the Interim Committee or any legislators who adopted Oregon's Evidence Code. *See id*. at iii-iv (preface indicating, "[a]s of November, 1981, twenty-two states had adopted codifications of evidence law based upon the Federal Rules" but that "[t]he Oregon adoption came too late for inclusion in this volume").

### III.   APPLICATION

As a preliminary matter, the parties disagree on the standard of review this court applies for reviewing the admissibility of evidence under OEC 1003(1).

Defendant asserts that this court should review for legal error because OEC 1003(1) requires an objective analysis—either a genuine question is raised or not—instead of a discretionary or factual one. Defendant asserts that nothing in the statutory provision indicates that the trial court is called to weigh any evidence, conduct balancing, make a final authentication determination, or make factual findings that would lead to an abuse of discretion standard.

Conversely, the state argues for review under an abuse of discretion standard noting that is the standard used by federal appellate courts to review whether a "genuine question" has been raised under FRE 1003. The state argues that this court reviews rulings on authenticity for abuse of discretion and, therefore, whether a genuine question as to authenticity has been raised should be reviewed the same way. But the cases on which the state relies address a court's discretion with respect to how precisely a proponent must describe the chain of custody to support admission of an exhibit—not whether a court has discretion with regard to the question of whether an opponent has pointed to evidence from which a jury could find that an exhibit is not what the proponent claims it to be. *Vander Veer v. Toyota Motor Distributors*, 282 Or 135, 146-47, 577 P2d 1343 (1978); *Amer. Recip. Insurers v. Bessonette*, 241 Or 500, 505-06, 405 P2d 529 (1965). Moreover, regardless of how authenticity may have been decided prior to 1981, the current code makes clear that whether proffered evidence is authentic is a question for the factfinder to resolve—as long as there is "evidence sufficient to support a finding that the matter in question is what its proponent claims." OEC 901(1); Legislative Commentary to OEC 901, *reprinted in Oregon Evidence*, § 901.02, 951-52.

We note that federal appellate courts review *all* evidentiary rulings for abuse of discretion. *General Elec. Co. v.*

*Joiner*, 522 US 136, 141-42, 118 S Ct 512 (1997). But, as this court has explained, even if a federal court reviews an evidentiary determination for an abuse of discretion, an erroneous construction of the law would meet that standard, and no "'federal court has ever held that a district court's error as to a matter of law is not an abuse of discretion.'" *See Arrowood Indemnity Co. v. Fasching*, 369 Or 214, 247 n 18, 503 P3d 1233 (2022) (quoting *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F3d 1087, 1091 (9th Cir 2010)). Further, this court is not bound by the standard used to review an evidentiary rule's federal counterpart. *See id.* at 247 (discussing that federal circuit courts review trial court rulings regarding hearsay exceptions for abuse of discretion whereas Oregon appellate courts review a trial court's ruling regarding hearsay exceptions for errors of law).

In Oregon, evidentiary disputes are reviewed for either abuse of discretion or legal error. *State v. Cunningham*, 337 Or 528, 536-37, 99 P3d 271 (2004) (citing *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999)). When a question involves application of principles that can lead to "only one legally correct outcome," this court reviews whether the trial court erred as a matter of law. *Id.* at 538. However, when the application of appropriate principles would permit more than one legally correct outcome, Oregon appellate courts review for abuse of discretion. *Id.* at 536-38. With that framework in mind, we conclude that whether a party has raised a "genuine question * * * as to the authenticity of the original" under OEC 1003(1) is a question that we review for legal error, because there is only one correct answer: either the opponent pointed to evidence sufficient to permit a reasonable juror to find that the original is not what the proponent claims it to be, or there is no evidentiary basis for the jury to find that the original is inauthentic.

Applying that standard of review, we disagree with the Court of Appeals' conclusion that defendant failed to raise a genuine question as to the authenticity of the original. As indicated above, the Court of Appeals concluded that a party cannot meet their burden of raising a "genuine question" by simply denying that they signed a document. *Blue*, 331 Or App at 681. But our analysis of the text, context, and

legislative history has persuaded us that a genuine question as to authenticity is raised by testimony that—if believed—would permit the jury to find that the evidence is not what the proponent claims it to be. *Cf.* OEC 901(2)(a) (explaining that a party may authenticate a piece of evidence by presenting "[t]estimony by a witness with knowledge that a matter is what it is claimed to be").

And we conclude that defendant presented evidence sufficient for a reasonable juror to conclude that the original document depicted in the photograph was inauthentic, and therefore raised a genuine question as to its authenticity. In defendant's pretrial "best evidence" objection, defense counsel pointed to defendant's prior testimony from the first trial that she had never signed the document depicted in the photograph and that the signature was not hers. We understand defense counsel to have been making an offer of proof and representing that defendant would again testify to the same bases for questioning authenticity of the original. That testimony to which defense counsel pointed was under oath and offered ample basis for the jury to find that the original was not a rental contract that defendant had signed at the Albuquerque Chevron. She not only testified that she had never signed or been shown the contract, but also described an alternative version of the events that explained how defendant could have left the Chevron without signing a contract and why she would not have agreed to a one-day, in-town rental. And defense counsel pointed to potentially corroborating evidence that there was no signed contract in the official U-Haul database, which further supported defendant's assertion that the signed contract was not authentic. Therefore, the trial court erred by admitting the photograph of the signed contract under OEC 1003(1).

We recognize that the trial court's error in admitting the duplicate does not require reversal if the evidentiary error was harmless—meaning that the error had little likelihood of affecting the verdict. *State v. Bowman*, 373 Or 213, 232, 564 P3d 121 (2025). Generally, "[a]n evidentiary error is more likely to influence a verdict if the error relates to a central factual issue in this case, and is less likely to influence a verdict if it relates to a tangential issue." *State*

*v. Bement*, 363 Or 760, 779, 429 P3d 715 (2018). Erroneously admitted evidence is more likely to have affected a verdict if it is "'qualitatively different' from the other evidence on that point, rather than 'merely cumulative.'" *State v. Edmonds*, 364 Or 410, 430, 435 P3d 752 (2019). With these guiding principles in mind, we turn to the record in this case.

The premise that defendant had signed the contract depicted in the photograph was central to the state's theory that defendant was guilty of the two counts of UUV. The first count required the state to prove that defendant *knowingly* exercised control over the U-Haul without consent. ORS 164.135(1)(a) (2017). The second required the state to prove that defendant had *knowingly* retained possession of the truck without consent of the owner in a gross deviation from the rental agreement. ORS 164.135(1)(c) (2017). Thus, both counts required defendant to have acted knowingly, for which the state's strongest evidence was defendant's purported signing of a contract for a one-day rental in New Mexico. There was no testimony from the gas station employee who rented the U-Haul to defendant, or anybody else aside from defendant, who had first-hand knowledge as to what defendant would have understood the agreement to be. Although the jury saw an unsigned version of the same contract, which had been uploaded to the U-Haul system, the duplicate of the signed contract was not merely cumulative of that evidence. Instead, the unsigned version was defendant's affirmative evidence to support defendant's testimony that she had never signed a one-day rental contract. The persuasive strength of the photograph purportedly showing that she signed the one-day contract was qualitatively different evidence to prove that defendant "knowingly" possessed the truck for longer than her rental agreement permitted—a fact crucial to an element of both counts of UUV. Defendant testified that it was not her signature on the photocopied document and that she had never signed a contract, but the jury was allowed to resolve the case without examining the best evidence of the state's claim that defendant had signed a one-day rental contract.

The state argues that any error was harmless because, in any trial on remand, there are other ways that

the state could again introduce evidence of the signed contract, either by obtaining the original or through another exception to the best evidence rule. We emphasize that the state is not suggesting it *did* attempt to offer the evidence through one of these other methods, which might have presented an alternative basis for affirming the trial court. Instead, the state is speculating that a hypothetical new trial would unfold in a way that produces the same result as the trial in which the error occurred. But that is not how this court approaches the harmless error inquiry. Whether an error is harmless reflects on an error's possible influence on the actual verdict rendered in the case. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). We do not predict or speculate hypothetical outcomes of a case on remand. *See State v. Sanchez-Alfonso*, 352 Or 790, 807-08, 293 P3d 1011 (2012) (declining to "speculate about what may have happened if the case had been tried otherwise" in the harmless error analysis).

Because the photograph of the contract was a central, noncumulative piece of evidence necessary to prove an element of both counts of UUV, we conclude that the trial court's error in admitting the duplicate to the same extent as an original was not harmless.

## IV.   CONCLUSION

In sum, we conclude that the photograph of the signed U-Haul contract was inadmissible as a duplicate under OEC 1003(1) because defendant's offer of proof raised a genuine question as to the authenticity of the original contract. We further conclude that the trial court's admission of the photograph did not qualify as harmless error. Accordingly, we reverse both the decision of the Court of Appeals and the trial court's judgment of conviction.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.