334 June 4, 2026 No. 27

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

LYNN EDWARD BENTON,
*Defendant-Respondent.*

(CC CR1201792) (SC S072292)

On appeal from an order of the Clackamas County Circuit Court under ORS 138.045(2) and ORAP 12.07.*

Argued and submitted March 18, 2026.

Jennifer S. Lloyd, Assistant Attorney General, Salem, argued the cause and filed the briefs for plaintiff-appellant. Also on the briefs were Dan Rayfield, Attorney General, and Paul Smith, Solicitor General.

David Sherbo-Huggins, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the brief for defendant-respondent. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, Bushong, and Masih, Justices, and Nakamoto, Senior Judge, Justice pro tempore.**

FLYNN, C.J.

The order of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

* Ulanda L. Watkins, Judge.

** James, J., did not participate in the consideration or decision of this case.

**FLYNN, C.J.**

In this criminal case, the state alleged that defendant conspired with two people, Jaynes and Campbell, to kill defendant's wife. Defendant filed a pretrial motion to preclude Smith, Jaynes's coworker, from testifying that Jaynes had left work on the day of the murder. Defendant contended (among other things) that Smith was not competent under OEC 601 to testify to that fact because suggestive police interrogation tactics and other factors had contaminated Smith's memory. The trial court granted the motion, concluding that, although Smith was generally competent to testify about relevant facts on the day of the murder, he was not competent to testify about whether Jaynes had left work that day.

On the state's interlocutory appeal from that pretrial ruling, we reverse.[1] The competency requirement in OEC 601 depends on whether a person has sufficient capacity to perceive, recollect, and communicate to be a witness at all. Concerns regarding the quality of the person's memory of particular facts, or other concerns bearing on the admissibility of testimony regarding a particular fact, are addressed through other rules of evidence. Thus, the trial court erred when it held that, under OEC 601, Smith would be precluded from testifying about the particular matter of whether Jaynes had left work on the day of the murder.

## I.  BACKGROUND

A.  *Historical Facts*

Defendant's wife, DB, was killed between 4:30 p.m. and 8:40 p.m. on May 28, 2011.[2] The state charged defendant with the murder, alleging that he had solicited Campbell and her son, Jaynes, to kill DB. Jaynes initially told the police that he was working at a Chevron gas station on the

---

[1] ORS 138.045 authorizes the state to appeal a trial court's pretrial ruling suppressing evidence and provides that, when the ruling is in a murder or aggravated murder case, the appeal shall be taken in this court. ORS 138.045(1)(d), (2). While the appeal was pending, this court granted the trial court authority to hold certain pretrial proceedings, including proceedings on a possible plea. Defendant pleaded guilty to first-degree manslaughter on May 26, 2026. The parties agree that the appeal is not moot until defendant is sentenced, which is scheduled for July 1, 2026, and have not asked this court to stay its work on the case.

[2] The date of the murder, May 28, 2011, was the Saturday of Memorial Day weekend, which may have made that day more memorable than another Saturday.

day of the murder, and that Smith, a coworker, could verify his whereabouts that day. When detectives interviewed Smith, he stated that he had worked with Jaynes that day and confirmed that Jaynes had not left work. Later, when pressured by the detectives and after multiple polygraph examinations, Smith changed his story several times, at one point telling the detectives that Jaynes had met with Campbell on the day of the murder and that Jaynes had left work twice that day, once between 3:00 p.m. and 4:00 p.m. and again between 4:30 p.m. and 5:30 p.m.

In September 2015, Smith told a defense investigator for Jaynes that he did not remember whether Jaynes had left work on the day of the murder. He also told the investigator that he had experienced memory problems over the past five years as the result of life stressors and head injuries. In May 2016, Smith testified during a hearing on a motion to dismiss the charges against Jaynes that he did not remember whether Jaynes had left work on the day of the murder.

Defendant was tried and convicted of the charged offenses in 2016. Smith did not testify at that trial. Defendant's convictions were later reversed based on the erroneous denial of a motion to suppress statements that defendant had made to an informant while in jail. *State v. Benton*, 371 Or 311, 534 P3d 724 (2023).

In advance of the retrial, an investigator for the state met with Smith in March 2025. Smith told the state's investigator that he remembered that Jaynes had left work during his shift at the gas station on the day of the murder, but he could not remember any other details surrounding that fact, such as when Jaynes had left or how long he had been gone.

B.  *Trial Court Proceedings*

In April 2025, defendant filed a pretrial motion to exclude Smith from testifying that Jaynes had left work during his shift on the day of the murder. In defendant's pretrial motion, defendant cited several rules of evidence, including OEC 601 and OEC 602.[3] Under OEC 601, "any

---

[3] Defendant also argued that Smith's testimony should be excluded under OEC 401, 402, 403, and 701. The trial court, however, based its ruling on OEC

person who, having organs of sense can perceive, and perceiving can make known the perception to others, may be a witness." That rule is subject to exceptions, including OEC 602, which provides that a witness "may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

In his motion, defendant summarized Smith's encounters with the police and the varying versions that he had provided when asked whether Jaynes had left work on the day of the murder. Defendant asserted that Smith's memory of that fact had "been contaminated and altered by various sources, but primarily by suggestive, biased, and coercive police procedures." Defendant argued that, regardless of whether Smith had originally perceived whether Jaynes had left work on the day of the murder, Smith could no longer recall and relate his original perception of that fact and, as a result, he was not competent under OEC 601 and no longer had personal knowledge of that fact as required by OEC 602. The state opposed the motion, arguing that Smith was competent to testify because he could understand the questions posed to him and communicate his answers, and he had personal knowledge of what he had observed at work on the day of the murder.

The trial court held a hearing on defendant's motion. At the hearing, both parties offered exhibits reflecting Smith's various statements about whether Jaynes had left work and Smith's ability to remember that fact. Defendant presented testimony from two experts on memory contamination and suggestive police questioning tactics.[4]

The trial court issued its ruling on defendant's motion orally at the end of the hearing, then signed a written

---

601 without addressing defendant's arguments under OEC 401, 402, 403, 602, or 701. Because the trial court did not base its ruling on any of those rules, we decline to decide them here in the first instance.

[4] One expert, Dr. Leo, testified about interrogation tactics and the use of polygraph results that could make it easier for people to agree to false statements. The other expert, Dr. Pezdek, testified about how memory works and how it could be contaminated in ways that could interfere with a person's ability to access their original memory. Defendant also presented an affidavit signed by a polygraph expert in 2015 that opined that the police use of polygraph examinations created a substantial risk that Smith had been manipulated into acquiescing to suggestions and statements put forward by the detectives.

order consistent with its oral ruling. In its oral ruling, the trial court noted that "the defense is challenging the competency of the witness under 601 and 602," but the court relied only on OEC 601's competency requirement in its ruling. The court stated that, although the Oregon Supreme Court had adopted "a very liberal standard of competency" under OEC 601, that standard required that the witness's ability to perceive and make perceptions known to others "encompasses the sort of perceptions that will be relevant to the issues to be decided at trial." Thus, the court concluded, "the proper inquiry is not whether the person is able to perceive and communicate in any capacity, but rather whether the person has sufficient ability to perceive, recollect, and communicate[ ] [s]o it is worthwhile for the person to testify."[5]

Applying that standard, the court determined that, "as it specifically relates to whether or not [Jaynes] left the Chevron station during his shift on May 28th, 2011, Mr. Smith does not have the ability to recollect and communicate this relevant issue to the trier of fact." The prosecutor then sought clarification of the court's ruling. In response, the court stated that it based its ruling on Supreme Court case law directing it to determine Smith's competency by asking, "can he recall the specific issues, is he able to testify effectively so that it makes his communication worthwhile[?]"

The court's written order stated that Smith "is not competent to testify on the issue of whether [Jaynes] left the Chevron Station during his shift on May 28, 2011, because [Smith] does not have the present ability to perceive, recollect, and communicate on the matter." The order further stated that "Smith is competent to testify to relevant matters other than what has been excluded by this order," which allowed him to testify about other facts that Smith may have perceived on the day of the murder.

At a subsequent hearing after issuing its written order, the trial court further explained the grounds and scope of its ruling. The court said that Smith had been

---

[5] The court indicated that it was applying the test stated in a Court of Appeals case, *In re J.H.*, 326 Or App 640, 533 P3d 363 (2023). *J.H.* cited *State v. Sarich*, 352 Or 601, 616, 291 P3d 647 (2012) and the Legislative Commentary to OEC 601 in support of that test. We address *Sarich* and the Legislative Commentary later in this opinion.

subjected to multiple interviews and examinations that included suggestive interrogation tactics, such as threats, accusations, and false information, and that Smith's memory was compromised by his ADHD, trauma that had resulted from his sister's murder, and other sources of stress in his life that he had previously identified as affecting his memory. The court also relied on the fact that Smith himself had said that he could not recall Jaynes's whereabouts when testifying in 2016. The court indicated, based on all those facts, that it "believed [Smith's] memory was destroyed" as to Jaynes's whereabouts on the day of the murder and, as a result, Smith was not competent to testify on that matter.

Because the trial court excluded Smith's testimony through a pretrial order suppressing evidence in a murder trial, the state sought direct interlocutory review in this court. ORS 138.045(1)(d), (2).

## II.   ANALYSIS

OEC 601 provides that, subject to exceptions in OEC 601 through 606, "any person who, having organs of sense can perceive, and perceiving can make known the perception to others, may be a witness." Whether a person's ability to perceive and communicate is sufficient to make that person competent to testify as a witness under OEC 601 "is an issue for the court to determine under OEC 104(1)." *State v. Milbradt*, 305 Or 621, 624, 756 P2d 620 (1988).[6]

Our review of the trial court's determination of competency under OEC 601 "involves a two-step process." *State v. Sarich*, 352 Or 601, 615, 291 P3d 647 (2012). First, we determine "whether the trial court applied the correct legal standard for determining competency." *Id*. Second, if the trial court applied the correct standard, "we review the record to determine whether the trial court abused its discretion in determining competency." *Id*.; *see also State v. Hightower*, 361 Or 412, 421, 393 P3d 224 (2017) (recognizing

---

[6] OEC 104(1) provides:

"Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (2) of this section. In making its determination the court is not bound by the rules of evidence except those with respect to privileges."

that "legal determinations that are predicates for the exercise of discretion are reviewed for errors of law").

In this case, the parties disagree about the correct legal standard for determining whether a person is competent for the purposes of OEC 601. Although the trial court's order stated that Smith "does not have the present ability to perceive, recollect, and communicate" whether Jaynes had left work on the day of the murder, it is clear from the context that the court based its ruling only on its assessment of Smith's ability to *recollect* whether Jaynes left the Chevron station during his shift on May 28th, and not his ability to perceive or communicate that fact.

According to the state, that is the wrong standard because a trial court's role under OEC 601 is to determine only whether the person has the general capacity to perceive and recount their perception, not to exclude testimony by a generally competent witness based on the inability to recall a specific matter. Therefore, the state contends, the trial court erred in ruling, under OEC 601, that Smith was not competent to testify about whether Jaynes had left work on the day of the murder because Smith's memory of that fact was "destroyed."

According to defendant, however, competency for the purposes of OEC 601 extends to a witness's ability to perceive, recall, and communicate about the particular matter on which the proponent is offering the witness's testimony. Therefore, defendant contends, the trial court did not err in precluding Smith from testifying about whether Jaynes had left work on the day of the murder based on its findings that Smith did not have the ability to recall that fact.

Thus, the parties' dispute comes down to whether, when determining whether a person is competent for purposes of OEC 601, the trial court may consider whether a person has the ability to recall a specific fact. To resolve that question, we must construe OEC 601, which we do by examining its text, in context, as well as any helpful legislative history. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009).

We begin with the text, which is the best evidence of the legislature's intent. *PGE v. Bureau of Labor and*

*Industries,* 317 Or 606, 610, 859 P2d 1143 (1993). OEC 601 provides:

> "General Rule of Competency. Except as provided in Rules 601 to 606[7], any person who, having organs of sense can perceive, and perceiving can make known the perception to others, may be a witness."

The text of OEC 601 does not expressly mention the person's ability to recall. But it is implied because the ability to recall is necessary for a person to "make known" their perceptions. *See* John Henry Wigmore, 3 *Evidence* § 725, 71 (Chadbourne rev 1970) ("The element of recollection thus stands between the element of observation (or knowledge) which it preserves and reproduces, and the element of communication (or narration), by which it is in turn reproduced and made apprehensible by others."). That is confirmed in the commentary to OEC 601, which describes the proper inquiry as "[w]hether [the] person has sufficient ability to perceive, *recollect* and communicate so it is worthwhile for the person to testify." OEC 601 Commentary (1981) (emphasis added).[8]

The question that the parties dispute is whether the ability to recollect required by OEC 601 is a person's general capacity to recall perceptions or a person's ability to recall specific perceptions as to which the person will testify. The plain text of OEC 601 establishes the requirements for a "person" "to be a witness," which indicates that it concerns whether a person may testify at all, as opposed to whether a person may testify as to a specific fact. And the text indicates that whether a person can be a witness depends on the person's general capacities—namely, that the person "can perceive" and "can make known" their perceptions, which includes that the person can recall perceptions.

The fact that the text of OEC 601 requires that a "person" must possess certain general capacities in order to

---

[7] OEC 602 precludes a witness from testifying about a matter absent sufficient evidence to support a finding that the witness has personal knowledge of the matter. OEC 603 requires witnesses to make an oath or affirmation that they will testify truthfully. OEC 604 governs interpreters. OEC 605 and 606 prohibit judges and jurors, respectively, from testifying in the cases before them.

[8] Although the 1981 commentary "was not adopted by the entire Legislative Assembly, this court has consistently turned to it for guidance in interpreting the evidence code." *State v. Blue*, 374 Or 439, 453, 580 P3d 826 (2025).

"be a witness" is particularly significant in light of its contrast with the text of OEC 602, to which OEC 601 expressly refers. That rule provides:

> "Lack of Personal Knowledge. Subject to the provisions of Rule 703[9], a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not consist of the testimony of the witness."

As the parties' arguments in the trial court suggest, there are similarities between the concept of having "personal knowledge" and the concept of having the capacity to perceive and communicate, and those similarities may be a source of the confusion about the standard under OEC 601. Like competency, whether a person "has personal knowledge" incorporates an aspect of past perception that can be communicated to the jury. *See Webster's Third New Int'l Dictionary* 1252 (unabridged ed 2002) (relevantly defining "knowledge" as meaning "the fact or condition of possessing *within mental grasp* \* \* \* one or more truths, facts, principles, or other objects of perception" (emphasis added)); *compare* OEC 602 (permitting testimony only from a witness who "*has* personal knowledge" (emphasis added)) *with* OEC 803(5) (addressing a person who "*once had* knowledge but now has insufficient recollection to enable the witness to testify fully and accurately" (emphasis added)).

The distinction between the two rules significantly informs our understanding of what the legislature intended for the standard that governs competency under OEC 601. As the text of OEC 602 makes clear, that rule is concerned with whether a "witness" may testify "to a matter." The role for the trial court is limited to determining whether there is evidence "sufficient to support a finding that the witness has personal knowledge of the matter," OEC 602; if so, then the foundation requirement has been satisfied. *See State v. Hickman*, 355 Or 715, 729, 731, 330 P3d 551 (2014), *modified on recons*, 356 Or 687, 343 P3d 634 (2015) (describing question of whether a witness has "the requisite personal

---

[9] OEC 703 concerns expert testimony. This case does not involve expert testimony, and all of our references to "witnesses" are to lay witnesses.

knowledge to testify under OEC 602" as a matter of "conditional relevance under OEC 104(2)" and observing that questions of conditional relevance "are appropriate questions for juries" (internal quotation marks omitted)).

Thus, OEC 601 concerns whether a "person" may "be a witness," and the role of the court is to decide, as a matter of discretion, whether the jury gets to hear from the person at all. OEC 602 allows a trial court to exclude testimony by a "witness" on a particular "matter," but the role of the court is to decide only whether there is enough evidence of personal knowledge that a juror could reasonably give some weight to the testimony. The differences between the two rules indicate that OEC 601 addresses whether a person may testify to the jury at all, whereas OEC 602 addresses whether, even if a person is competent to "be a witness," the person may lack personal knowledge of a particular matter, which makes that testimony as to that matter inadmissible or only conditionally relevant. That distinction, in turn, indicates that a person's ability to recall, if limited to a particular matter, is not relevant to whether the person is generally competent for the purposes of OEC 601.

That understanding is reflected in our past decisions analyzing OEC 601. *See State v. Cloutier*, 351 Or 68, 100, 261 P3d 1234 (2011) (explaining that our analysis of a statute is "informed by this court's prior construction of that statute or its predecessors"). With respect to the competency standard, we have explained that "Oregon has adopted a liberal standard for determining who may testify. * * * Ferreting out and discounting biased testimony is treated as a question of believability for the jury, not admissibility for the court." *Equitable Life Assurance v. McKay*, 306 Or 493, 498, 760 P2d 871 (1988).

And our decisions in both *Milbradt* and *Sarich* adhere to that line. In *Milbradt*, we explained that OEC 601 imposes a standard that focuses on general capacities, requiring that a witness "(1) have the capacity to perceive"; "(2) have capacity to recall and recollect the impressions of fact perceived"; and "(3) have the capacity to communicate[.]" 305 Or at 624 (internal citations omitted). In that case, the trial court had determined that two alleged victims of rape

and sexual abuse were competent to testify as witnesses under OEC 601 even though the victims had severe developmental disabilities and "had great difficulty recalling and relating the times of the alleged assaults." *Id.* We affirmed, first noting that the trial court had "correctly ruled that [it] should not determine the credibility of the witnesses." *Id.* at 625. We then explained that, "[s]o long as the witnesses possessed capacity to perceive and communicate factual matters and understand that they were under an obligation to tell the truth, they were sufficiently competent to testify." *Id.*; *see also* OEC 603 (requiring a witness to have taken an oath or affirmation to testify truthfully). Notably, we affirmed the trial court's decision that the victims were "sufficiently competent to testify" despite their difficulty remembering specific details. 305 Or at 624-25.

Our decision in *Sarich* also addressed a witness's general capacity to perceive and communicate truthfully. In that case, we reviewed a trial court's order declaring that the defendant's son, Z—"a 19-year-old man who suffers from autism and developmental disabilities"—was not competent to testify at trial under OEC 601. 352 Or at 602.[10] We affirmed, concluding that, although it was apparent from the trial court's interactions with Z that he "had some ability to perceive, Z's ability to communicate his perceptions to others was severely limited." *Id.* at 617. We emphasized that Z could "answer a yes or no question regarding the name of an object presented to him," but that "he would be unable to answer accurately more abstract or complex questions." *Id.* Those limitations, we observed, "would effectively exclude most questions involving intangible actions, past events, persons and objects not present at trial, distances, times, dates, and locations, all of which could and likely would require some degree of comprehension of abstract concepts." *Id.* at 616. Given that comprehensive inability to testify "in a way that would be useful at trial," we concluded that the trial court had not abused its discretion in determining that Z was not competent to be a witness. *Id.* at 617.

---

[10] The trial court also noted that, in its interactions with Z, it did not "get to the point of recall in terms of showing him something again to see if he could recall that [the court] had shown it to him earlier, because [the court] was trying to deal with the issues of truth and not truth." *Id.* at 612 (internal quotation marks omitted).

Defendant relies on *Sarich* to argue that, when determining whether a witness is competent, a trial court's task is to determine whether it would be "worthwhile for the person to testify," *id.* (internal quotation marks omitted), and to further argue that the trial court correctly performed that task when it determined that it would not be worthwhile for Smith to testify about whether Jaynes had left work on the date of the charged crime. But the court in *Sarich* focused on the witness's general capacity to understand and communicate his perceptions and how those general capacities would affect the presentation of evidence at trial. Thus, although we agree with defendant that, in determining whether a person has "sufficient ability to perceive, recollect and communicate" to be qualified as a witness under OEC 601, a trial court is determining whether it would be worthwhile for a person to testify, *Sarich* does not suggest that a trial court may determine a person's competency to be a witness based on the person's ability (or inability) to recall a particular fact. *Id.* (internal quotation marks omitted).

Our examination of the text and context of OEC 601, as well as our past decisions, supports the state's understanding that the competency standard under that rule is addressed to whether a person possesses the general capacities needed to "be a witness" at all, leaving concerns about specific areas of testimony by the witness to be addressed under other evidentiary rules. The legislative history of OEC 601 further supports that understanding.

OEC 601 was enacted as part of the 1981 Oregon Evidence Code, which was the result of a legislative effort that included the production of the 1981 Conference Committee Commentary. This court has frequently relied on that commentary when construing the code. *State v. Blue*, 374 Or 439, 452, 580 P3d 826 (2025); *see also State v. Serrano*, 346 Or 311, 324, 210 P3d 892 (2009) (explaining that, although the commentary is not an official part of the code, "it provides highly useful background regarding each rule and guidance to courts and attorneys in interpreting [the code]" (internal quotation marks omitted)). We turn to it now.

The commentary to OEC 601 begins by stating that "Oregon Rule of Evidence 601 states the general principle of

competency of witnesses." OEC 601 Commentary (1981). It then explains that, at common law, there were many bases for disqualifying witnesses from testifying, including "criminal conviction, interest in the outcome, marital relationship, sex, race or religion." *Id.* It goes on to explain that, for over a century, those "common law rules of incompetency have been revised piecemeal by statute, so that today most of the former grounds for excluding a witness from testifying have been converted into mere grounds for impeachment of credibility. \*\*\* Oregon Rule of Evidence 601 confirms this trend." *Id.*

Thus, the commentary shows that OEC 601 has its origins in common-law rules governing the disqualification of witnesses. Those rules were based on general characteristics, not whether a person knew or recalled a specific fact. And the rules were "grounds for excluding a witness from testifying." OEC 601 Commentary (1981). If a person was disqualified under the rules, then the person was precluded from testifying at all, not just from testifying to a specific fact. *Id.* Thus, the commentary's description of the origins of OEC 601 indicates that, like its predecessors, OEC 601 establishes a categorical disqualification based on personal characteristics and is not a basis for precluding a witness from testifying about a specific fact.

That indication is reinforced by the commentary's statement that "whether any person has sufficient ability to perceive, recollect and communicate so it is worthwhile for the person to testify is a question for the trial court to decide in the exercise of sound discretion." OEC 601 Commentary (1981). Again, the commentary appears to be referring to a person's general capacities, and the cases that the commentary cites in connection with the quoted statement all involved the question of whether a person had the general capacities necessary to testify at all. *Id.* (citing *State v. Pace*, 187 Or 498, 212 P2d 755 (1949) (mental capacity); *State v. Jensen*, 70 Or 156, 140 P 740 (1914) (age); *State v. Jackson*, 9 Or 457 (1881) (age); and *State v. Stich*, 5 Or App 511, 484 P2d 861 (1971) (age)).

Defendant, nevertheless, relies on another sentence in the commentary to OEC 601: specifically, a sentence that follows the commentary's explanation about how the

common-law disqualifications have changed over time. The sentence describes the effect of a series of rules. It states:

> "*Rule 601—and Rules 602 to 606-1* which it incorporates by reference—effectively remove all the common law disqualifications. *Under these rules*, any person called upon to testify need only recognize the necessity of telling the truth; have knowledge of the matter from personal observation; have some recollection of that knowledge at the time of testimony; be able to communicate that knowledge; and be free of any disqualification that would render the person's testimony presumably inaccurate or prejudicial, to testify."

(Emphases added.) Based on that sentence, defendant argues that, to be competent for the purposes of OEC 601, a witness must have "knowledge of the matter from personal observation" and "have some recollection of that knowledge at the time of testimony." Therefore, defendant further argues, a trial court can rule, under OEC 601, that a person is not competent to be a witness as to a specific fact if the person does not recall that fact at the time the witness testifies.

The problem with defendant's argument is that, although the quoted sentence appears in the commentary to OEC 601, it does not purport to describe the scope of OEC 601 alone. Rather, it describes the scope of a series of rules that include both the competency requirement in OEC 601 and the personal knowledge requirement of OEC 602. *See id.* (referring to OEC 601 to OEC 606-1 and describing the scope of "these rules"). The parts that defendant relies on—requiring that the witness "have knowledge of the matter from personal observation" and "have some recollection of that knowledge at the time of testimony"—more closely track OEC 602. As mentioned above, the similarities between OEC 601 and OEC 602 appear to be a source of confusion in this case, but the rules serve distinct roles in addressing concerns about a witness's memory. It is OEC 602 that addresses "knowledge of the matter from personal observation" and "recollection of that knowledge at the time of testimony," and that is the rule to which we understand the quoted sentence in the Commentary to refer. Therefore, we reject defendant's argument that the Commentary establishes that a trial court may rule, under OEC 601, that a witness is competent to testify to some facts but not others.

To summarize: The text of OEC 601, which states that any "person" who "can perceive" and "make known" their perceptions "may be a witness," indicates that OEC 601 concerns whether a person has the general capacities necessary to be a witness at all. That indication is supported by this court's cases applying OEC 601, which focus on the general capacities of a potential witness. *See Milbradt*, 305 Or at 624 (affirming trial court's ruling that persons were competent for the purposes of OEC 601 where they had the general capacities necessary to testify, even though they had great difficulty recalling some facts); *Sarich*, 352 Or at 616-17 (affirming trial court's ruling that a person was not competent under OEC 601 where he could not answer "most questions involving intangible actions, past events, persons and objects not present at trial, distances, times, dates, and locations"). It is also supported by the commentary to OEC 601, which—through its description of the common-law origins of the rule and its citations to cases involving competency determinations—indicates that the rule is aimed at identifying a person who is categorically disqualified from being a witness based on personal characteristics.

Returning to this case, the trial court's determination that Smith was generally competent to testify about the events that he perceived on the day of the murder, but that he was not competent to testify that Jaynes had left work that day, demonstrates that the court applied the wrong legal standard to assess competence under OEC 601.[11] We thus conclude that the trial court erred when it held that OEC 601 precluded Smith from testifying that Jaynes had left work on the day of the murder.

The order of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[11] In challenging Smith's memory of whether Jaynes left work on the day in question, defendant has relied extensively on our discussion in *State v. Lawson/ James*, 352 Or 724, 291 P3d 673 (2012), addressing how suggestive police procedures can affect the reliability of eyewitness identification evidence. Our decision in *Lawson/James* involved challenges under OEC 403, OEC 602, and OEC 701, to testimony by a witness regarding a particular fact. Our decision that OEC 601 addresses only the general capacity of a person to be a witness at all has no bearing on defendant's argument under *Lawson/James*. And because the trial court's ruling was based only on OEC 601, we do not reach defendant's arguments that Smith's testimony should be otherwise excluded under any other provision of the evidence code.